CHARLES W. SHREVE and ANNA E. his Wife *vs.* DANIEL T. SHREVE and others.

*Construction of a will—Life Estates—The word "Issue," construed to be a word of Purchase—Enlarging Estates by Implication.*

The will of a testatrix contained the following clause: "I give, devise, and bequeath all my lands, tenements and hereditaments, lying in the States of Maryland or Virginia, or either of them to my children, (naming them; there being five sons and two daughters,) for and during their natural lives, to be equally divided between them, and on the death of the said children, or either of them, I give, devise and bequeath the share or portion of said child to his or her issue lawfully begotten, and their heirs or assigns forever, and if any of said children shall die without issue lawfully begotten, I give, devise and bequeath his or her portion to the surviving child or children,

and their issue, and to the heirs of said issue forever." The testatrix by a subsequent clause in her will devised the share she had previously given to her daughter Mary, to a trustee, *in trust* for the sole and separate use of the said Mary during her natural life, free, clear and discharged from all liability or control of any future husband should she marry, and after her death to the issue of the said Mary lawfully begotten, and their heirs forever, and in case the said Mary should die without issue, then to her surviving brothers and sisters and their issue, to be equally divided between them and their heirs forever. By a further clause she disposed of the share of her other daughter in a similar manner    HELD :

1st. That the estate devised to the children of the testatrix was but a life estate; that to the daughters being an equitable estate.

2nd. That the word *"issue"* used in the clauses cited, was a word of purchase; and the portion given to each child for life would go, in case he or she died without leaving children, in the same way as the original share, that is, to the surviving children, and upon their death, to their issue in fee.

The doctrine of enlarging estates by implication arises only in cases where the testator has himself left it uncertain what estate he intended to give. It is to further an unexpressed intention, and not to subvert a plainly expressed one, that the doctrine of enlarging estates by implication, is resorted to; and where there is an estate for life given in express terms to one party, with a limitation of the fee to others, there is no room for this doctrine.

APPEAL from the Circuit Court for Frederick County, in Equity.

The case is stated in the opinion of the Court.

The cause was argued before BARTOL, C. J., STEWART, GRASON, and MILLER, J.

*Wm. H. Tuck*, for the appellants.

If the rule in Shelley's case applies to this will, the first devisees took estates in tail, which estates in Maryland, are converted into estates in fee-simple. And the devisees, being right heirs of the testatrix, and taking the same interest under the will as they would have taken if there had been no will, they are in, by the superior title, as

heirs and not as devisees, by descent and not by purchase.

Does the rule in Shelley's case apply·to this will? It is not an unbending rule; its application sometimes depends on the intention of the testator, to be collected from the whole will. But it is a rule of construction to be followed in all cases, and to have its legal effect, unless there is a *clearly expressed* intent that the first taker shall have only an estate for life. The rule with its qualifications must prevail as a part of our system of real law, because it has been fully adopted, &c., &c. *Ware vs. Richardson*, 3 *Md.*, 545; 1 *Preston on Estates*, 272—279; *Chelton vs. Henderson*, 9 *Gill*, 432; *Tongue vs. Nutwell*, 13 *Md.*, 423; *Simpers vs. Simpers*, 15 *Md.*, 160.

The word *issue* is *nomen collectivum*, as fully as heirs of the body, and a devise to a man and his issue will pass an estate tail, made here an estate in fee. They both clearly indicate that the property is to go in the same direct line. 2 *Powell on Dev.*, ch. 26; *King vs. Melling*, 1 *Ventr.*, 214, 225, *Same Case*, 2 *Levinz*, 58, 61; *Cooper vs. Collis*, 4 *Term*, 294; *King vs. Burchall*, 4 *Term*, 294, *note*; *Blandford vs. Applin*, 4 *Term*, 82.

But it is said that words of limitation are added to the word *issue*, which alters the interpretation that would otherwise be given to this devise; in other words, that the devise is thereby restricted to a life estate in the first taker, which, under Shelley's case, would have been an estate tail, converted into a fee simple. This was a reason assigned by Judge MAGRUDER in his opinion in *Chelton vs. Henderson*, 15 *Md.*, 191.

This proposition is too broadly stated, because there are many authorities to show that superadded words do not always defeat the estate of inheritance in the first taker, though they may have had that effect properly in that case, for according to that will the *issue* were to have the lands *in fee tail*, shewing an intent that the word *issue* was

used to designate a class of persons with whom the estate tail was to commence, and negativing the implication that he intended the first taker to have such an estate, or more than an estate for life. Such words will not destroy the estate of inheritance in the ancestor, where the remainder, after the life estate, is to heirs of the body. 2 *Powell on Devises*, 460, 526; 1 *Preston on Estates*, 383. Why should they, when added to *issue*, seeing, as the books shew, that this term comprises all who could claim as heirs of the body, and who might take from generation to generation, until the extinction of the direct line? It is as fully *nomen collectivum*, as heirs of the body.

The construction has sometimes depended on whether *issue* was used in the singular or plural. It is stated by counsel in the case of *Cooper vs. Collis*, 4 *Term*, 298, after referring to cases, that "there is no case in which *issue* has not given an estate tail, when used in the plural." To the same effect, see—*King vs. Burchall*, 4 *Term*, 298, *note; Dodson vs. Grew*, 2 *Wilson*, 322; 2 *Powell on Devises*, 515, 517; *Candler vs. Smith*, 7 *Term*, 533; 1 *Preston on Estates*, 380, 381; *Hodgson vs. Ambrose*, 1 *Doug.*, 337.

In the cases where superadded words have had the effect of destroying the estate of inheritance of the first taker, the limitation, after the word *issue* was so worded, as *clearly* to shew an intent that an estate should commence with the issue as a designated class, and not with the ancestor; sometimes by enlarging the estate that would, under the rule in Shelley's case, vest in the ancestor, and sometimes by restricting it. But if the superadded words are of the same import, they have no effect. 1 *Preston on Estates*, 347, 380, and cases cited.

There is nothing in this will to restrict the word *issue* to mean *children, sons, or any individuals*. The limitation over could not take effect until the entire line of issue had failed, just as there must have been a failure of the entire line of heirs of the body, if these words had

been used, and this shows an intent to vest estates of inheritance in them.   *Candler vs. Smith*, 7 *Term*, 531, 533.

Where the term *children* is used, the testatrix means her own children *named* in the will, and not their children; and having used different words as to ancestors and their issue, a different interpretation must be presumed to have been intended by her.

But, aside from the rule in Shelley's case, the estates for life of the devisees under this will were enlarged to estates tail—in fee in this State—by reason of the limitation over in default of issue, because in such cases it is the manifest intention of the testator that said estate should not go over until the whole line of the issue was extinct.   2 *Powell on Devises*, ch. 30, *pp.* 526, 602; *Knight vs. Ellis*, 2 *B. C. C.*, 598; *Blackborn vs. Edgley*, 1 *P. Wms.*, 600; *Brice vs. Smith, Willes*, 5; *Murthwaite vs. Jenkinson*, 2 *Barn. & Cres.*, 359; 1 *Preston on Estates*, 347.

It is necessary to give this construction to the will in order to effect the general intent, as to the children and their issue, which general intent must prevail over a particular intent.   If the word *issue* be construed as *children*, or as designating a class, for the commencement of a new estate in them, and not derivative from their several ancestors—the first takers—the will would apply only to those living at her death, if any, whereas it must have been the design of Mrs. Shreve to put all her descendants on the same footing, that is, to give to her after-born grandchildren the same interest that those *in esse* took under the will. By any other construction those born afterwards would be excluded.   *Benson vs. Wright*, 4 *Md. Ch. Dec.*, 278.

There are cases to shew that the rule in Shelley's case has been applied on this distinction.   *King vs. Burchall*, 4 *Term*, 296—note; *Webb vs. Puckey*, 5 *Term*, 299.

The result of the cases seems to be this:  Where the remainder, after the life estate, is given to the heirs gene-

ral or special, as a class, to take in succession from generation to generation, and not given to some individual of the class of heirs, with a limitation to the heirs of such individuals, then the rule applies ; and if the class, to take in succession, comprises all and no one else, of the general or special heirs of the devisee for life, then his estate is enlarged to an estate of inheritance. It is for this reason that a remainder to the issue of the first devisee will give the inheritance to him. That term embraces all the persons who could be heirs in tail, and no one else, to take in succession from generation to generation.

The evidence shows the intent of the devisor, and the interpretation by the devisees, the Court and the Commissioners. Not being excepted to in the Court below, it may be resorted to in ascertaining the rights of the parties ; "and must be allowed its full force." *Gale vs. Gibbs,* 7 *Md.,* 76.

The will creates a trust for her husband by directing her heirs and devisees, annually to pay a sum of money for his support, and charging all her real estate with its payment. This laid a *personal obligation* upon all the children ; each would be liable for the whole, and not rateably according to the value of his interests under the will. The charge on the lands would not render them less liable, personally, and if the lands as might happen in many cases of this kind, proved inadequate, they would still be individually responsible. And if they took only estates for life, their several estates in other property might be answerable after their interest in this land had ceased by death ; and making their representatives liable to pay this annuity when they were deriving nothing from the property charged with its payment. *West vs. Biscoe,* 6 *H. & J.,* 460 ; *Spencer vs. Spencer,* 4 *Md. Ch. Dec.,* 462 ; *Glen vs. Fisher,* 6 *Johns. Chy.,* 33 ; *Tolson vs. Tolson,* 8 *Gill,* 376.

In cases of this kind the testator intends the devisee to pay the legacy out of the funds or estate with which he is

intrusted, and if there be any doubt as to the *quantum* of estate arising on the face of the will, the law will imply a fee-simple to enable the devisee to carry out the design of the testator, in requiring the money to be paid. 2 *Story's Eq.*, 1247 ; *Crawford vs. Severson*, 5 *Gill*, 446.

The proceedings and decree in the partition case, conclusively settled the construction of the will, and virtually decided that the children of Mrs. Shreve took estates in fee. The Court had no jurisdiction to proceed, as was done in that case, by allowing the complainant to take the land at a valuation under the Act of descents, unless it had construed the will as now insisted on by the appellants, and having jurisdiction according to that view of the case, and having by such construction, and the confirmation of the partition and election, vested a fee-simple estate in the party electing, it was the duty of the Court below to have respected those proceedings, and quieted the title of the complainant. The appellant relies upon his title under that decree, and it is too late now to question the correctness of the proceedings, even if irregular, informal or erroneous, in matter of fact or law. *Raborg vs. Hammond*, 2 *H. & G.*, 42 ; *Barney vs. Patterson's Lessee*, 6 *H. & J.*, 182 ; *Ranoul vs. Griffie*, 3 *Md.*, 54 ; *Beall vs. Pearre*, 12 *Md.*, 550.

The evidence shews that under that decree and other proceedings the complainant took the land at a fee-simple valuation ; that he has paid off all the then claimants except two, and for the balance he owes them, has incumbered the estate, and he now seeks by a declaration of his right to the property, to have the cloud on his title removed, so that he may hold and enjoy the estate according to the true construction of the will and the common understanding of all parties from the death of the devisor to the present time.

*C. II. Wood,* for the appellees.

The children of the testatrix took under her will only a life estate; the face of the will clearly shows this to have been her design. The language used is strictly technical and precise; and whoever prepared the will was accustomed to, and fully understood the use of technical language, and evidently knew its force and effect.

That the fee-simple was to vest in the grandchildren of the testatrix also appears, and is shown by the technical character of the language used; for in the will the word issue is used with words of limitation superadded, in which case the word issue must be construed to be a word of purchase, (2 *Thomas' Coke Littleton, top page* 174, *note,*) which gives to the grandchildren of the devisor the fee, and to the ancestors a life estate.

The rule in Shelley's case, therefore, cannot apply in this case, because it clearly appears from the will that the first taker, takes only a life estate, and the issue take the fee; and where a different intention clearly appears the rule in Shelley's case does not apply. 4 *Kent's Comm., secs.* 214 *to* 232, *inclusive; Chelton vs. Henderson's Lessee,* 9 *Gill,* 432; *Tongue's Lessee vs. Nutwell,* 13 *Md.,* 419; *Simpers' Lessee vs. Simpers,* 15 *Md.,* 160.

In the proceedings had in the partition case, and under which the appellants claim title, in addition to the devise in the will, the grandchildren of the testratrix were not parties, and therefore not bound by the decree or proceedings, even if said proceedings were regular. But the proceedings were utterly irregular and erroneous. The Court in that case, it would seem, proceeded under the Act to direct descents. And there is nothing to show that the Court passed upon the will at all, and if concluded, it must be assumed; and it would be unsafe to assume so important a fact from such irregular proceedings, especially when it would tend to defeat the clearly expressed will of

the testatrix, and deprive her grandchildren of the estate she intended to give.

However, the Court in the partition case, could have made partition of the life estate of the first taker, and it can be assumed that the decree of the Court only covered the life estate, which would not defeat the fee-simple estate of the grandchildren. This can do the purchaser no injustice, because he, in dealing with the Court through its agents, was bound to know, at his peril, the title he got.

The grandchildren not being parties to the *decree passed* by the Circuit Court for Montgomery County, making partition of the estate, cannot be affected by said decree and proceedings under it ; and by the authority in *Tongue's Lessee vs. Nutwell,* 13 *Md.*, 419, *and Chelton vs. Henderson,* 9 *Gill,* 432, the rule in Shelley's case does not apply, and the decree of the Court below must be affirmed. If the decree of the Court below should be affirmed, the appellees are willing the case shall be remanded, in order that further proceedings may be had, looking to a sale or lease of the estate during the life estate of the children of the testatrix.

MILLER, J., delivered the opinion of the Court.

The record in this case shows that Mrs. Mary E. Shreve died in 1855, leaving a will duly executed to pass real estate, which contains this clause :

"I give, devise, and bequeath all my lands, tenements and hereditaments, lying in the States of Maryland or Virginia, or either of them, to my children, namely : Daniel T. Shreve, Benjamin F Shreve, Charles W. Shreve, Thomas J. Shreve, Mary E. Shreve, Ann Olivia Shreve and Arthur B. Shreve, *for and during their natural lives,* to be equally divided between them, and on the death of said children, or either of them, I give, devise and bequeath the share or portion of said child to his or her *issue* lawfully begotten, and *their heirs* or assigns forever,

and if any of said children shall die without *issue* lawfully begotten, I give, devise and bequeath his or her portion to the surviving child or children and their issue, and to the *heirs of said issue forever.*"

These seven children survived the testatrix and were her sole heirs-at-law. One of them, Mary E. Shreve, subsequently died intestate and without issue. The Maryland lands of the testatrix consisting of about eight hundred and twenty acres, lie in Montgomery and Frederick Counties, and in 1866 a bill was filed on the equity side of the Circuit Court for the former county, *by four of the surviving children against the other two*, setting out the above clause of the will, and praying for a partition of the estate, and if that could not be effected, then that the same be sold and the proceeds distributed to the parties according to their respective interests. Under this bill Commissioners were appointed, who divided the lands into three parts, and valued the same, the total valuation amounting to over $30,000. Two of the sons, Charles and Thomas, then elected to take these parts at this valuation, but the latter abandoned his election, and the former on petition and order of the Court, was substituted in his place, and in March, 1867, decrees or orders were passed ratifying the Commissioners' return, directing bonds to be given for the shares due the other children, and authorizing the Commissioners, on payment of these liens, to convey the whole estate to Charles W. Shreve. The latter then took, and has since remained in possession of the property, and in June, 1874, he and his wife filed the bill in the present case in the Circuit Court for Frederick County.

This bill sets out the will, the proceedings in the partition case, and avers that the complainant has paid the whole valuation of the Commissioners except $10,120, to two of the children which he has secured by mortgage, that the Commissioners have executed to him a deed for the property, and all the children of the testatrix now

living have also executed deeds to him therefor; that all the real estate in Virginia, valued at about $19,000, was taken by Daniel, another son, under a similar understanding and construction of the will; that of the surviving children, Thomas has died leaving a widow and two children, that Daniel, Ann Olivia, and the complainant Charles have each married and have children now living, and that Benjamin and Arthur have no children and have never married. The bill then charges that the children of the testatrix took under her will and the law of this State a fee in the property thus devised, and that the complainant has by this will, the proceedings in the partition case, and the deeds from his brothers and sisters, become the absolute owner in fee of the whole estate, but that doubts have arisen as to his title, and it is urged and claimed that the children of the testatrix took only life estates, and that the fee is vested in her grandchildren; that by reason of this doubt and cloud upon his title he is unable to sell, lease, or make any satisfactory disposition of the estate or any part of it, and he therefore prays the Court to quiet his title and remove this cloud upon it, or if he has but a life estate then that the property be leased or sold, and the proceeds invested for his use during the continuance of his interest, and then to the grandchildren, and for general relief.

The surviving children and all the grandchildren of the testatrix *in esse* (the latter to the number of twenty and all infants) are parties to this bill. The adult defendants by their answer admit the averments of the bill, and submit to such decree as the Court may deem proper. The infants answered by guardian that they do not admit any of the matters charged in the bill, and submit their rights to the protection of the Court. Certain testimony was then taken under a commission, which need not be particularly stated, and the case submitted for a decree. The Circuit Court decided the children took but life estates, but being

of opinion a case was not made out authorizing a decree for a sale or lease of the lands, dismissed the bill, and the complainants have appealed.

We have therefore to decide what interest the complainant, Charles W. Shreeve, has acquired in this real estate; and this depends upon the question whether the seven children of the testatrix took under her will, estates for life or in fee. But it is said that in construing this will, we are not to be confined to the instrument itself, but may resort for aid to the extrinsic testimony taken under the commission. That testimony consists of parol declarations by the testatrix after she had made the will as to its effect, and her intentions in executing it, and like proof as to what interpretation had been placed upon it by the devisees, the Court in the partition case, and the Commissioners who divided the estate. The position is that as this testimony was not excepted to in the Court below, it may be resorted to by this Court in ascertaining the rights of the parties, and must be allowed its full force, and for this the case of *Gibbs vs. Gale*, 7 *Md.*, 76, is cited. All this testimony was clearly inadmissible to affect the construction of the will or the rights of the infant defendants, and the Court below in fact refused to consider it for that purpose. The adult defendants having parted with all their rights in the property, had no interest in resisting the complainant's claims, and the infants whose interests alone were antagonistic to those of the complainant do not appear to have been represented by counsel, either at the taking of the testimony, or at the hearing of the case, when exceptions to it ought to have been filed on their behalf. Under these circumstances, it would be an unreasonable extension of the doctrine in *Gibbs vs. Gale*, to apply it to this case, and we must therefore construe this will by the light afforded by the paper itself.

And in doing this, it is necessary to notice at the outset, two clauses of that instrument, other than the one

above cited. In one of these the testatrix devises the share she had previously given to her daughter Mary, to a trustee, *in trust,* for the sole and separate use of the said Mary during her natural life, free, clear and discharged from all liability and control of any husband she may marry, and after her death, to the *issue* of the said Mary lawfully begotten, and *their heirs* forever, and in case the said Mary shall die without issue, then to her surviving brothers and sisters, and their issue, to be equally divided between them and *their* heirs forever. The estate thus limited to the daughter, is an *equitable,* whilst that to the issue is a *legal,* estate, and hence, the rule in *Shelley's Case* can have no application, for it is well settled, that if the estate limited to the ancestor be an equitable or trust estate, and that to the heirs be an executed use or legal estate, the two estates will not coalesce in the ancestor under that rule. *Ware vs. Richardson,* 3 *Md.,* 545; *Horne vs. Lyeth,* 4 *H. & J.,* 435. By the other clause, she also disposes of the share of her daughter Ann Olivia in a similar manner, that is, the estate to the daughter is made an equitable life estate, whilst that to the issue is a use executed. Both these daughters therefore took but life estates.

Thus far the case is a plain one, but what estates the sons take under this will, depends solely upon the construction of the clause first above cited, and this is by no means free from difficulty. The immediate question is, does this clause call into operation the rule in *Shelley's Case.* That rule with its qualifications has been so often recognized and adopted by the Courts of this State, that nothing but an Act of the Legislature, can strike it out of our system of real law. The rule has been clearly and accurately defined, but the question of its application to particular cases has perplexed judicial tribunals (more perhaps than any other) from the time of its first introduction to the present day. And when we consider how

the language of different instruments constantly varies, that scarcely any two are couched in precisely the same terms, and that title to real property has always been a fruitful source of litigation, it is not surprising to find the decisions on this vexed question numerous, and in some instances, apparently conflicting and irreconcilable.

Stripped of verbiage, separated, and reduced to its legal elements, the first part of the clause before us, contains a devise to each of these children to this effect, *viz:* to the child *for life*, remainder to his *issue* lawfully begotten, and *their heirs* forever.    And here it is to be noted, first, that the devise is not to the *heirs* but to the *issue* of the life tenant, and, notwithstanding what has been said by some writers, the *cases* show that the Courts have applied the rule more readily where the devise is to the *heirs* or *heirs of the body*, than where it is to the *issue* of the first taker. The latter is regarded as a term of equivocal import, being either a word of limitation or of purchase, meaning heirs of the body or children, according to the intention of the testator deduced from the expressions contained in his will.    Again, there are words of limitation superadded to the gift to the issue ; it is to them and *their heirs* forever. Now in the well known case of *Luddington vs. Kime*, 1 *Ld. Ray.*, 203, the devise was in very nearly the same terms, viz : to A for life without impeachment of waste, and in case he should have any *issue* male, then to such *issue* male and *his heirs* forever, with a limitation over in default of such issue, and the Court held the testator intended the word *issue* should be *designatio personæ*, and not a word of limitation *"because he added a further limitation to the issue, viz: and to the heirs of such issue forever."*    The principle deduced from this case is thus stated in *Cruise's Digest, Vol.* 6, (3 *Am. Ed.*,) *page* 259, *sec.* 48.    "Where an estate is devised to a person for life, with remainder to his issue, with words of limitation superadded, the word issue will in that case be construed

to be a word of purchase." In *Powell on Devises*, (*Vol.* 2, *ch.* 26,) a work of high authority, the learned author strenuously argues that *Luddington vs. Kime*, cannot be reconciled·with subsequent decisions, and is clearly overruled by them, as well as the case of *Doe vs. Collis*, 4 *Term Rep.*, 294. In that case, the testator devised his estate to his two daughters to be equally divided between them, viz: one moiety to one and her heirs, and the other moiety to the other *for life*, and then to the *issue of her body* and *their heirs*, with no limitation over, and it was held the second daughter took an estate for life only, with remainder to her children as purchasers. That decision was made by Ld. KENYON who said the position to be collected from all the authorities cited, is "that in a will, *issue* is either a word of purchase or of limitation, as will best answer the intention of the devisor, though in the case of a deed it is universally taken as a word of purchase," and that the words *heirs of the body* which "always give way with greater difficulty than the word *issue*" have in some instances been construed words of purchase, and "therefore without disputing any of the cases cited; but on the contrary in conformity with them all and relying upon them for the foundation of this judgment, namely : that the intention of the devisor must prevail, I am of opinion that the devisor *in this case* used issue as a word of purchase." In support of the construction he gave to that will, his Lordship relied upon the circumstance that the property was to be equally divided, which it would not be if the second daughter were held to take an estate tail, for in that case the reversion in fee in that moiety would be again subdivided between the heirs of the two daughters, but Mr. Powell thinks it is difficult to accede to the reasoning which ascribes to the words of division this operation upon the construction, since they were merely applied to the corpus of the land and not to the inheritance, and in the light of subsequent decisions,

which he reviews, insists the case is overruled "and that a devise to A for life, remainder to his issue, and the heirs of such issue with or without a limitation over, is an estate tail in A," and adds "such a case can hardly again be deemed a proper subject for adjudication." He also contends that upon principle, words of distribution annexed to the devise to the issue, or any other expressions making a mode of enjoyment inconsistent with the course of descent under an estate tail, are equally inoperative with superadded words of limitation, to turn the word *issue* into a word of designation. Upon this question, however, he admits a conflict of authority, but expresses a strong opinion that when the Courts in future come to deal with the word *issue*, accompanied with words of modification inconsistent with an estate tail, they will reject the superadded words. But these views do not appear to have been adopted at least by the most recent English decisions, for in *Golder vs. Cropp*, 5 *Jurist, N. S.*, 562, where a testator devised property to his daughter for life, and after her death to the issue of her body lawfully begotten, to hold to them and their heirs forever as tenants in common, and in default of such issue then over, it was held the daughter took but a life estate. That case was decided by Sir J. Romilly, M. R., and his opinion is thus briefly and emphatically expressed: "I have always considered that where an estate is given to the ancestor, and there is a direction that it is afterwards to go to the issue of his body, and the mode in which the issue are to take is specified, with words added giving them the absolute interest, there the ancestor takes an estate for life and not an estate tail, although there is a devise over in the event of the ancestor not having any issue. No one can doubt that the word *issue* is here used as equivalent to *children*. I am of opinion the daughter takes an estate for life, and that her issue take as purchasers an estate in fee-simple as tenants as common." So in the still more recent case

of *Bradly vs. Cartwright,* 2 *Com. Pleas,* (*Law Rep.,*) 511, it was held that where an estate is given for life and the remainder to the issue is accompanied by words of distribution and by words which would convey an estate in fee or in tail to the issue, the estate of the first taker is limited to an estate for life; and that whether the estate is given in fee to the issue by the usual technical words, heirs of the body, or by implication.

It may be as stated by Mr. Powell, that subsequent decisions in England have in effect overruled *Luddington vs. Kime,* and that at the present time the will before us would receive a different construction in the English Courts, but we have been referred to no decision in this country, nor are we aware of any in which that case has been overruled or its authority questioned. It is, with others cited by Chancellor KENT, as authority for the position that where the testator superadds words of explanation, or fresh words of limitation and a new inheritance is grafted upon the heirs to whom he gives the estate, the case will be withdrawn from the operation of the rule. 4 *Kent's Com.,* 221. It meets an approving reference in the very able opinion of YEATES, J., in *Findlay vs. Riddle,* 3 *Binney,* 156, where there was a devise to A for life, and if he died leaving lawful *issue,* to his heirs as tenants in common and *their respective heirs* and assigns, and the Court held that A took only an estate for life with a contingent remainder to his heirs.

But what is more important to the decision of this case, is the fact that the doctrine of *Luddington vs. Kime,* and other similar cases, has been repeatedly recognized and approved by the Courts of this State. Thus in *Horne vs. Lythe,* 4 *H. & J.,* 435, a case which Chancellor KENT cites as containing a learned and accurate exposition of the rule under all its modifications and exceptions, we find an exception to its operation thus stated: "So where the persons to take cannot take as heirs by the description by

reason of a distributive direction incompatible with a course of descent, as where gavel kind lands were devised to A and the heirs of her body lawfully to be begotten, as well males as females, and to *their heirs and assigns forever*, to be equally divided between them, share and share alike as tenants in common and not as joint tenants; in this case it was held that the words heirs of the body did not operate as words of limitation because they were corrected or explained by the words which followed, and were irreconcilable with the notion of descent, *and also because there were words of fee engrafted on the words of limitation* which showed that the estates given to the children and not the estate of A were to be the ground work of succession of heirs, or in other words that the children of A were to be the *termini* for the succession to take its course from.''

Again in *Lyles vs. Diggs,* 6 *H. & J.*, 373, we find approval of *Backhouse vs. Wells,* (another case that Mr. Powell insists has been overruled in England,) in reference to which the Court say ''the devise was to one for life and after his decease to the issue male of his body and to the heirs male of the bodies of such issue, and the first taker was held to have only an estate for life, the word *issue* not being *ex vi termini* a word of limitation, and the *words of limitation grafted upon it,* as in this case, showing that it was used as a word of purchase and as descriptive of the person who was to take the estate tail.'' In *Chelton vs. Henderson,* 9 *Gill,* 432, the testator devised land to his son *for life,* and if he should have lawful *issue* of his body then such *issue,* after the son's death, to have the land *in fee tail,* and if the son died without such issue then over, and it was held the son took but a life estate. In the opinion prepared by Judge Magruder, in that case (which is reported in a note to *Simpers vs. Simpers,* 15 *Md.*, 191,) he says, ''In the case now to be decided there are words superadded to the word *issue, quite sufficient* to give *them* the inheritance; and the *law is,* that where an estate is

devised to a person for life with remainder to his issue, with words of limitation superadded, the word issue will in that case be construed to be a word of purchase,'' which is the doctrine of *Luddington vs. Kime,* cited from *Cruise's Digest.* In *Simpers vs. Simpers,* (15 *Md.,* 190,) the Court notice the case of *Chelton vs. Henderson,* which had been pressed upon their attention, and though declining to adopt all the reasoning of C. J., Dorsey, who delivered the opinion of the Court in that case, remark that the construction given to that will could be reconciled with antecedent decisions, that looking to the phraseology of that devise, no violence was done to any settled rule of construction by that adjudication, that '' in that will there were words superadded to the word issue, sufficient to give the issue the inheritance without enlarging the life estate given to the first taker, and in such a case there is authority for construing the word *issue* as a word of purchase.'' They then cite the same passage from *Cruise's Digest,* and add '' upon that principle the judgment in *Chelton vs. Henderson,* may be supported without infringing the rule in *Shelley's case.*''

After this repeated and recent recognition by our predecessors of this rule of construction derived from *Luddington vs. Kime,* and other like cases in the earlier English Reports, we are constrained to hold that it applies to and governs that part of that clause of this will, which we have thus far considered, even though we may be of opinion a different construction would be given to it by the Courts of England.    Having thus determined the word *issue* is here used as a word of purchase, it is clear it must bear the same construction when used in the immediately following sentence, ''and if any of said children shall die without *issue* lawfully begotten, I give, devise and bequeath his or her portion to the surviving child or children and their *issue* and to the *heirs* of *said issue* forever.'' In other words the portion given to each child for life, goes in case

he dies without leaving children in the same way as the original share, that is ·to the surviving children *for life*, and upon their death to their *issue in fee*. That is plainly the construction and effect of this part of the clause, if we are right in the construction we have placed upon the former part of it, and is also the construction of the concluding paragraphs of the two subsequent clauses disposing of the daughters' shares in trust. By the careful repetition of nearly the same words in these several clauses, the testatrix has manifested a clear intention, that each child shall take the same interest and estate in any portion he may derive from the failure of any of his brothers and sisters to leave *issue*, that is *children*, that he took in his own share, and this we have said is but a life estate.

Two other positions taken by the distinguished counsel for the appellants remain to be considered.

1st. It is insisted that the estates for life in the children, are *enlarged* to estates in fee, because of a subsequent clause of the will by which the testatrix bequeaths the sum of $300, to be annually paid by her heirs and devisees, for the support of her husband during his single life, and charges all her real estate with the payment of this annuity. But the doctrine of enlarging estates by implication has no application here. It is only in cases where the testator has himself left it uncertain what estate he intended to give that this implication arises. This is made plain by a moment's consideration of the origin, reason and limitation of the doctrine of implication. It was first settled that a general devise of lands without words of limitation confers on the devisee an estate for life only ; but the rule which thus gave to an indefinite devise, the restricted construction of an estate for life, was always viewed with disfavor as *subversive of the intention* of testators, who generally suppose that a devise in indefinite terms includes all their interest in the property, as in the case of personalty, and the Courts evinced an anxiety

26          v. 43.

to fasten upon any circumstances furnishing a ground for taking cases out of its operation. Hence arose several classes of cases in which such devises have been enlarged to a fee by implication; among which is the long established one, that a condition or direction imposed on a devisee to pay a sum of money, enlarges a *devise without words of limitation*, to an estate in fee-simple. 2 *Powell on Devises*, *ch*. 19. It is therefore to further an unexpressed intention, and not to subvert a plainly expressed one, that such implications are resorted to, and where, as here, there is an estate for life given in express terms to one party with a limitation of the fee to others, there is no room for this doctrine. The testatrix has herself in plain terms limited the estates of each set of devisees, and the Court has no power under the license of implication to defeat her intentions, and break up the disposition of her property by taking the fee from those to whom she has given it, and bestowing it upon those to whom she has given but a life estate. It is, moreover, not out of place to remark here, that the necessity for an implication like this, is taken away in this State, by the Act of 1825, ch. 119, (*Code*, *Art.* 93, *sec.* 305,) a statute which was probably passed in consequence of the decision in *Beall vs. Holmes*, 6 *H. & J.*, 205.

2nd. It is next contended that the complainant has acquired a fee in these lands, and that the construction of the will was conclusively settled in his favor, under the decree and proceedings in the partition case. But none of these grandchildren were parties to that proceeding, and probably most of them were not *in esse* at that time. If these proceedings had resulted in a simple partition of these lands into seven equal parts, and the allotment of one part to each of the parties to that suit, then each life tenant would have sufficiently represented his own children for that purpose, and the partition so made could not afterwards be disturbed. But that is not what was done.

By the process of election, the complainant has obtained possession of the whole estate, and it is claimed that thereby the title of these grandchildren, who were not parties to that suit, and not even born then, has been taken from them, and vested in him. We are clearly o opinion no such consequence can be imputed to the proceedings and decree in that case, no matter whether that Court construed the will as giving a fee to the children or not. Our views as to the effect of such a decree have been recently expressed in the case of *Downin vs. Sprecher*, 35 *Md.*, 474, and need not be repeated here. It follows from what we have said that in our opinion, the complainant has acquired nothing more than a life interest in this property, and we accordingly so adjudge and determine.

We also entirely agree with the Court below, that the allegations of this bill, and the proof now in the case, do not authorize a decree for a sale or lease of the lands. But we are of opinion that by amendment of the pleadings and further proof, a case may be made for such sale or lease under the Act of 1862, ch. 156, and as the counsel for the appellees in this Court has expressed in his brief a willingness, that the case shall be remanded for that purpose, we shall accordingly remand the same, under the Code, Art. 5, sec. 28, without affirming or reversing the decree appealed from.

*Cause remanded.*

(Decided 21st December, 1875.)