Mr. Chief Justice Alvey
delivered the opinion of the Court:
In the construction of wills the rule is paramount that the intention of the testator must prevail, unless it clearly conflicts with some settled rule of law that will not give way to such intention. In arriving at the intention of the testator, we must read the whole will together, and give to each term employed its full and natural meaning; and no words of the testator should be rejected, or refused their sensible meaning in the place where employed, unless it be required to make sense for the context of the will. It is competent to the testator, however, to use technical terms in a sense different from the technical meaning ordinarily attached to them, and to explain the sense in which such terms are used; but, to do this effectually, plain explanatory words must be used, or the sense in which the terms are employed, differing from their ordinary meaning, must be so plainly inferable that there can be no misunderstanding of what is meant.
In this case, it will be observed, the testator, in the first clause of the devise, wherein he gives the whole of square 483, and also lots 20, 21, and part of lot 22, in square 378, to Mrs. Brayfield for life, limits the remainder to her three daughters during their natural lives, and after their death to their heirs begotten of their bodies, and to their heirs and assigns forever. And then he gives specific direction for the subdivision and distribution of square 483, after the death of Mrs. Brayfield, among the three daughters; and again, as if *54 to emphasize and make more explicit his meaning, he repeats the limitations, and declares that the daughters shall have their respective subdivisions of the square, during their natural lives, and at their death, to be equally divided among the heirs of their bodies begotten, share and share alike, and to their heirs and assigns forever. Though the limitations in the two paragraphs are substantially the same, yet in the latter paragraph the testator appears to have been designedly more explicit in the expression of his intention than in the preceding paragraph.
We have then in this devise, in express terms, ist, a devise to the daughter for her natural life; 2d, at her death, the property directed to be equally divided among the heirs of her body begotten, share and share alike; and, 3d, with words of limitation added appropriate to limit a fee simple estate in the heirs of the body, if these latter words be read as the equivalent of children.
Now, keeping in mind the principle that the intention must control, it would seem difficult, upon any principle of natural construction, to resist the conclusion, upon the terms of the devise, that Mrs. Mitchell took a life estate only, and the direction to divide the property equally, at her death, among the heirs of her body, was simply a direction that the property should be divided among her children. If not, why the express limitation for life to the mother? Or why the direction for equal partition of the property among the heirs of the body? Or why the superadded limitation to the heirs of the latter? If a fee simple estate was intended to pass to Mrs. Mitchell, and not to her children as independent de-visees, all this elaborate phraseology to define the rights of the parties would have been quite useless. Indeed, the construction' contended for by the plaintiffs in this case requires us to reject all the words directing partition, and also the superadded words of limitation, and to deprive them not only of their ordinary meaning, but of all meaning whatever. There is no sufficient reason apparent for depriving these terms of all meaning, or for supposing that the testator used *55 them without understanding either their legal or natural import. It is quite clear, from subsequent clauses of the will, that when he desired to devise an estate in fee, he knew what appropriate terns should be employed; as is shown in the devise to Mrs. Mitchell of the west part of lot 18 in square 378, and also in the devises to his two brothers.
It is unquestionably true, upon the assumption that the devise to Mrs. Mitchell was of a fee simple estate, that such devise would lapse, as contended by the plaintiffs; for, in such case, Mrs. Mitchell being dead at the time of the devise, her heirs could not take by descent, because their ancestor never had vested in her any descendible estate; and consequently the devise would lapse and become void, and the estate fall back into the estate of the testator. It is in view of this general principle that the plaintiffs have contended that the life estate limited to Mrs. Mitchell, by operation of the rule in Shelley’s Case, coalesced with the remainder over, limited to the heirs of her body, and thus constituted an estate tail general at the common law; and that, by force of the statute to direct descents, such estate tail was enlarged into an estate in fee simple. It is upon this theory, as to the construction of the devise, that the present bill was filed. The court below held that Mrs. Mitchell took a life estate only under the devise, and that her children took an estate in fee simple in the remainder, subject to the life estate of Mrs. Susan Bray-field, and decreed accordingly. And in that conclusion we entirely concur.
It is certainly a well settled principle in the law of real property, indeed as well settled as the rule in Shelley’s Case itself, that where an estate is expressly devised to a person for life, with remainder to the heirs of his body, and there are words of explanation annexed to such word heirs, from whence it may be collected that the testator meant to qualify the meaning of the word heirs, and not to use it in a technical sense, but as descriptive of the person or persons to whom he intended to give his estate, after the death of the first devisee, the word heirs will, in such case, operate as a word of *56 purchase. This is stated as the result of the decisions by Mr. Cruise, in his Digest, Vol. 6, Tit. 38, Ch. 14, page 3x8, and it is supported by a long line of cases, both English and American.
The devise to Mrs. Mitchell for life and then to the heirs of her body, without more, would, unquestionably, have passed an estate tail only, at the common law, to the first devisee, Mrs. Mitchell; but the effect of the superadded words of limitation of heirs generally to succeed the heirs of the body, directed a different course of descent, according to the principles of the common law. And, upon the same principle, if an estate be devised to a person for life, remainder to his issue (the word issue being a word of limitation or of purchase, according to the context), with words of limitation superadded, the word issue will be considered as a word of purchase, by reason of the effect to be given to the super-added words of limitation. Luddington v. Kime, 1 Lord Raym., 203. In other words, in obedience to the general principle that every word in a devise should be given its full effect, the superadded words of limitation are allowed their full effect. The principle has been uniformly recognized,, even by those who have been the strongest advocates for maintaining the rule in Shelley’s Case in all its original integrity; and superadded words of limitation will control the meaning of the words heirs of the body, as they do the word issue; and convert those terms into mere words of description of the person or persons to take, as new stocks of inheritance. The principle of the cases was fully and elaborately explained by Lord Mansfield, in Doe v. Laming, 2 Burr., 1100, 1106, where it was held, citing and relying upon the case of Bagshaw v. Spencer, 2 Atk., 246, 577, 579, 582, that the words heirs of the body, followed by the words of limitation, “ and to their heirs and assigns forever,” were to be taken as words of description of children. That case has been followed in many subsequent cases; and the principle and reasoning of that case fully apply to the case now before us, though some of the circumstances of that case were dif *57 ferent from those of the present case. That case, however, fully and conclusively asserted the principle that the words heirs of the body may be explained to mean children, and that this explanation may be derived from the superadded words of limitation to the words heirs of the body, the words, and to their heirs and assigns forever, as well as from other words of explanation. The same principle is adopted and applied in the case of Right v. Creber, 5 B. & Cr., 866.
In the great and leading case in the English real estate law of Jesson v. Wright, 2 Bligh, 1, decided in the House of Lords, opinions by Lord Eldon and Lord Redesdale, both strict adherents of the established technical definitions of estates, we find it admitted by Lord Eldon that the words heirs of the body, which should generally be construed according to their legal import, will yield to a clear particular intent that the preceding estate should only be for life, and that may be from the effect of superadded words, or any expression showing a particular intent of the testator. Lord Redesdale used terms of qualification of the general principle maintained, of the same import. It was clearly admitted that the word heirs could be restrained by explanatory words to mean parties to take as purchasers under a devise. It is unnecessary to go more largely into an examination of the English cases. The American cases, and especially the cases decided by the Supreme Court of the United States, would seem to be quite conclusive of this case, against the contention of the plaintiffs.
In the case of Daniel v. Whartenby, 17 Wall., 639, the testator devised an estate to his son “ during his natural life, and after his death to his issue by him lawfully begotten of his body, to such issue, their heirs and assigns forever.” In case the son should die without lawful issue, then, in that case, the testator devised the estate to his own widow and two sisters, “ during the natural life of each of them, and the survivor of them,” and after the death of all of them, to J. W., his heirs and assigns forever. The son, thé first devisee, survived the testator, and died without issue; and after the *58 death of the widow of the testator and of his two sisters, J. W., the devisee in remainder, asserted claim; and it was held, upon full review of the authorities, that the rule in Shelley’s Case did not apply to the devise to the son, and that the estate taken by the son, the first taker, was not. a fee tail, but was an estate for life only, with remainder in fee to the issue of his body, contingent upon the birth of such issue, and, in default of such issue, remainder for life' to the widow and the two sisters, with remainder over in fee to J. W., the plaintiff in the action of ejectment. In that case, the words his issue lawfully begotten of his body, were read as descriptive of children, and therefore words of purchase.
It is true, in that case, it is said that the words issue of his body are more flexible than the words heirs of his body, and that courts more readily interpret the former as the synonym •of children, and a mere descriptio personanim than the latter; yet it does not, by any means, follow that the words heirs of his body will not yield to that interpretation. Indeed, many of the cases cited in the opinion of the court were cases where the devises were to one for life, and to the heirs of his body, with superadded words of limitation to heirs generally, as in the case of Doe v. Laming, 2 Burr., 1100, relied on by the court. The learned justice who delivered the opinion of the court, in speaking of the effect of explanatory words upon technical words of limitation, says (we italicize), “ But if there are explanatory and qualifying expressions, from which it appears that the import of the technical language is contrary to the clear and plain intent of the testator, the former must yield and the latter will prevail!’
That case has been repeatedly cited and the principle of it reaffirmed in subsequent cases in the Supreme Court; and it has been much cited with approval by other courts of the ■country. It may therefore be taken as a correct and authoritative exposition of the law upon the question involved. And in the courts of Maryland, where the law of real property is supposed to be the same as that which prevails in this District, except as it may have! been changed by positive leg *59 islation since the cession by that State, the same principle of construction has been fully recognized and applied in numerous cases, as that now applied in this case. This will clearly appear upon examination of the cases of Horne v. Lyeth, 4 H. & J., 435 ; Chelton v. Henderson, 9 Gill, 432 ; Shreve v. Shreve, 43 Md., 382 ; Fulton v. Harman, 44 Md., 263, and Clarke v. Smith, 49 Md., 117.
We shall not undertake a review of all the numerous cases cited and quoted from in the elaborate briefs of counsel in this case. That there are cases that would seem to give support to the contention of the plaintiffs, may be conceded; but we think the decided weight of authority is against it, and supports the construction that we have given this devise.
Upon the whole, we are clearly of opinion that the words heirs of their bodies begotten', read in the light of the whole context of the devise, and with the superadded words of limitation, are to be taken as equivalent to children; and so reading the devise, the mother, Mrs. Mitchell, if she had survived the testator, would have taken an estate for life only, and her children, consequently, took an estate in fee, subject to the life estate of the grandmother, Mrs. Susan Brayfield.
It follows that the decree of the court below must be affirmed, and it is so ordered, with costs to the appellees.

Decree affirmed.