(Decided 7th March, 1876.)

JOSEPH FULTON and ELIZABETH, his Wife, and others *vs.* WILLIAM H. HARMAN and NELSON D. RAMS-BURG and ELIZA ANN, his Wife.

*Construction of a Will—Life Estate—Right of a Court of Equity under section 66 of Article 16, of the Code, to appoint a Trustee to sell Real estate devised to be sold.*

A testator by his will devised to his wife, in lieu of dower, a tract of land containing about three hundred acres, during her life; and also gave to two of the children of his son George, certain pecuniary legacies; and after certain other bequests, he then devised and bequeathed all the rest of his property, real, personal and mixed, to his son George, *during his natural life,* and after his death the proceeds thereof to be equally divided between all his, George's lawful heirs; "first deducting the bequests already made, and when the others become equal, then the balance shall be divided between them share and share alike." George Harman, the son, and Christian Harman, the grand son of the testator, were appointed executors of the will; and by the last clause thereof, the testator empowered his executors to make public or private sale of any of his *remaining* real or personal property, to pay the bequests thereinbefore made. The widow of the testator died, and his son George, under the residuary clause of the will, came into possession

of the tract of land which had been devised to her for life. George subsequently took the benefit of the Insolvent laws, and said tract of land was sold and conveyed by his trustees to certain persons, their heirs and assigns as tenants in common. Under this sale through several mesne conveyances Elizabeth Fulton became possessed of this tract of land, claiming it as her absolute estate in fee-simple. George Harman died, and a bill was filed by two of his children for the purpose of procuring a decree appointing a trustee in the stead of George and Christian Harman, executors, to make sale of the tract of land in question, and to complete and carry out the trust created by the testator. By an amended bill an injunction was asked against Elizabeth Fulton to prevent her committing waste, &c. on said land. The injunction was issued as prayed. Subsequently a decree was passed making the injunction perpetual, and appointing trustees to sell the land and carry out the trust created by the will in relation thereto. On appeal by the defendants it was HELD :

1st. That as the words "lawful heirs" in the residuary clause of the will, were followed by words of partition and distribution inconsistent with the devolution of the estate by inheritance, the estate for life could not be enlarged to a fee-sinple, by force of the terms "lawful heirs;" but the gift being of the proceeds, to be divided in a manner specially prescribed, the terms of the gift must be construed as clearly indicative of an intent to give a life estate only to the son George, with a gift over to those who might be embraced within the terms "lawful heirs" as purchasers.

2nd. That upon the death of George Harman, and the refusal of the other executor to execute the trust under the will, the Court under the provisions of sec. 66 of Art. 16 of the Code, could rightfully appoint a trustee to make sale of the land for the benefit of those entitled in remainder under the will.

3rd. That the injunction was properly issued to restrain the destruction of timber on the land, until it could be sold for the benefit of those entitled to the proceeds of sale.

APPEAL from the Circuit Court for Frederick County, in Equity.

The amended bill of complaint in this case, filed by the appellees, charged that they had theretofore filed their bill of complaint in the Circuit Court for Frederick County, in equity, against a certain Joseph Fulton, Daniel J. Snook and Henry Metcalfe, for the appointment of a trustee in the place and stead of George Harman, deceased, and

Christian Harman, who declined to make sale of certain real estate therein specified, as devised and bequeathed by a certain Christian Harman, deceased, to his wife, Mary, for her life, and on her death to his son, George Harman, for his life, and on his death to be sold by his executors, the said George Harman and Christian Harman, therein named, and the proceeds to be equally distributed among all the lawful heirs of the said George Harman, and for an injunction against the said Joseph Fulton, to enjoin and restrain him from cutting timber and committing waste on said land claimed by him under a deed of conveyance from Daniel J. Snook, and afterwards conveyed by the said Joseph Fulton to the said Daniel J. Snook by deed of mortgage, and again conveyed by the said Joseph Fulton to the said Henry Metcalfe by absolute deed of conveyance. By way of amendment to their aforesaid original bill, the complainants charged that the said Henry Metcalfe and wife, by their deed of the 27th of November, 1861, did convey said tract of land hereinbefore specified to Elizabeth Fulton ; and the said Elizabeth Fulton, by said deed of conveyance obtained only an estate in said land and premises for and during the life of the said George Harman, and that said estate and interest of the said Elizabeth Fulton, terminated with the life of the said George Harman on the 25th July, 1862 ; and the complainants charged that the said Elizabeth Fulton, by herself, agents, workmen and employés, had been cutting, and was still engaged in cutting and destroying the timber on said land and hauling and carrying away the same, contrary to the right and to the irreparable injury of the said land, and of the complainants and the other devisees of the said land, and that the said Elizabeth Fulton was therefore a necessary party to this suit.

Subpœnas were prayed against Joseph and Elizabeth Fulton, Henry Metcalfe and Daniel J. Snook, and a writ of injunction against Elizabeth Fulton enjoining and

strictly prohibiting her, her agents, hirelings and employés from committing waste and cutting timber on the tract of land specified and described in the original bill, and from removing the timber cut by her on said land since the death of the said George Harman.

With the bill was filed a copy of the will of Christian Harman, deceased, which for the purposes of this case is sufficiently set out in the opinion of this Court. The injunction was issued as prayed.

The defendants Joseph and Elizabeth Fulton answered the bill. They admitted the death of George Harman. They charged that the complainants were not entitled to the three hundred acres of land in dispute, but that the said land was the absolute estate in fee-simple of the defendant Elizabeth, and that she was in the lawful possession thereof, using, occupying and claiming the same as her estate, free of any right or claim of the lawful heirs of the said George Harman, deceased. The respondents admitted that George Harman took the benefit of the insolvent laws of Maryland, and that the land in question was sold under an order of the Circuit Court for Frederick County, by the trustees of the said insolvent, and conveyed to certain W. A. Bennett, H. Rouzer and F. White, their heirs and assigns as tenants in common. It was under this sale and deed, through several mesne conveyances, that the respondent Elizabeth claimed title to the land in question. The respondents denied and excepted to the jurisdiction of the Court, as a Court of equity, to try and decide the title to the land in dispute between the parties claiming title thereto. They prayed that the injunction might be dissolved and the bill dismissed.

The defendant Daniel J. Snook also answered the amended bill. He admitted that he purchased from W. A. Bennett and wife, H. Rouzer and wife, and F. White and wife, the three hundred acres of land in question, and that the same was conveyed to him by deed of the 4th

of March, 1859 ; he alleged, that at the time he purchased and received the deed of conveyance, he supposed that he was purchasing said estate as an absolute estate in fee-simple, and that he sold and conveyed the same to the defendant Joseph Fulton, supposing he was conveying an estate in fee-simple.

Whether any proof was taken in the case did not appear from the record. The Court, on the 11th of April, 1874, passed a decree making the injunction previously issued, perpetual, and appointing certain persons trustees in the place of George and Christian Harman, the executors, to make sale of the said tract of land, of about three hundred acres, and to carry out the trust in relation thereto, created by the will of the testator, Christian Harman.

From this decree the defendants appealed.

The cause was submitted on briefs to BARTOL, C. J., STEWART, GRASON, MILLER and ALVEY, J.

*Wm. P. Maulsby, Jr.*, for the appellants.

What is in dispute, and is sought to be adjudicated in this case? Is it not perfectly clear and indisputable, that the title to the tract of land mentioned in the will, as devised to the testator's wife for life, and then to his son, George Harman, is the very and only question sought to be settled? That legal title is either in Elizabeth Fulton, as she claims, in Christian Harman, or the trustees appointed in his place, in trust to fulfil the objects of the testator's will, or in the heirs-at-law of George Harman. Is not the trial by ejectment in the common law Courts, the proper method of adjudicating upon this very question of title? Elizabeth Fulton is in possession, claiming and setting up title, Christian Harman, executor, seeks to get possession to sell the property. Why should he not pursue the method of ejectment in the common law Courts? Upon what principle of law or equity is he entitled to

have the assistance of a Court of equity while he has his remedy in a Court of law? It cannot be contended, that the object sought, is to make a sale, and leave the question of the right of possession to be contested between the said Elizabeth Fulton and the purchaser, in an action of ejectment.

The relief prayed for ought not to be granted, because the land in question is the property in fee-simple of the defendant, Elizabeth Fulton, and the complainants have no interest in the same.

The title of Elizabeth Fulton is founded upon the proposition, that the devise to George Harman, vested in him a fee-simple estate. The devise is the same in substance and effect, as if the words, the "proceeds thereof" had been omitted. The intent and object undoubtedly was to devise the whole estate in the same manner, as if the said words had not been used, and the remaining words are unaffected in their interpretation, whether as words of limitation, or purchase by their presence.

It can scarcely be denied, we think, that had the clause in the will ended with the words "between all his lawful heirs," that the estate conveyed by the will to George Harman, would have been an estate in fee-simple under the rule in *Shelley's Case*. Do the succeeding words make the rule inapplicable? See *Preston on Estates*, 271, 277, 282, 326. Are the words used in the devising clause sufficiently clear, certain and precise to *demonstrate*,—not make likely or probable,—that the words all his lawful heirs, were not used as their legal sense imports as words of limitation, but were used as words of purchase, intending to designate some particular persons? It occurs as a first question, if the latter meaning is demonstrated, who are the particular persons? Not necessarily his children, because all such might have deceased without issue, before the death of George Harman, the life tenant. Again, there is nothing in the provision, that the devises or be-

quests before made should be equalized, which would not apply as well to the other devisees, as to the children of George Harman. Any of the brothers and sisters, or representatives of such, of George, might have the benefit of said clause, in the event of their being his heirs at the time of his death. The second clause of the will devises to Mary Ann Harman, a daughter of the testator's son, William, a sum of money which would afford a subject for equalization in the contingency supposed. The words following the devise to the lawful heirs of George Harman, the life-tenant, are not sufficient of themselves to control the only words of limitation of the estate which the will contains, and which make the case at bar, a subject for the application of the rule in *Shelley's Case.* In brief, the testator devised and intended to devise to George, and his lawful heirs, the whole residue after the moneyed legacies mentioned; and in so doing, he used such words, as amount to a conveyance in fee-simple to George, and there are no words in the will indicating to the extent of a moral certainty, or as the authorities express it, to the extent of a demonstration, that the words lawful heirs were used in any other sense, than its technical and legal one. The rule in *Shelley's Case* is recognized as the law of Maryland, whether for the interpretation of deeds or wills. *Lyles vs. Digges,* 4 *H. & J.,* 431; 6 *H. & J.,* 364; *Griffith vs. Plummer,* 32 *Md.,* 77.

The bill does not present a case for an injunction, and if it did, the same should have been dissolved upon the filing of the answer. The bill in this case charges irreparable injury to the value of the land, by cutting the timber; that the chief, if not entire value of said land, consists in timber growing upon it. The answer denies that the land is so chiefly valuable as stated in the bill, but on the contrary, Elizabeth Fulton avers, that it has value, and she is using it for agricultural purposes, and she positively denies that the cutting which is done, has caused, or could

cause, any irreparable damage as alleged by the bill. If the injunction is set down for hearing on bill and answer, or on a motion to dissolve, the answer is regarded and taken for true in its allegations, so far as the same are responsive to the bill. New matter set up by way of evidence does not avail. *Hardy and Talburtt vs. Summers and wife,* 10 *G. & J.,* 317.

The answer has sworn away the equities of the bill, and it must be dismissed. Again, the facts set forth by the bill, do not of themselves show irreparable damage; the averment of such damage is not sufficient, but the bill must show facts which make it appear to the Court, that the averment is well grounded. *Herr vs. Bierbower,* 3 *Md. Ch. Dec.,* 456; *Carlisle vs. Stevenson,* 3 *Md. Ch. Dec.,* 499; *Ches. & Ohio Canal Co. vs. Young,* 3 *Md.,* 480; *Green vs. Keen,* 4 *Md.,* 98; *Roman vs. Strauss,* 10 *Md.,* 89.

In this case, the bill merely shows land valuable as wood land, and states no peculiar circumstances which enable the Court to see that the damages alleged to be suffered, are not such as can be compensated by a suit at law, and that they are irreparable. Wood land of itself, is valuable only for the timber on it as a merchantable article, and any damages by the use of the timber, are readily recoverable at law in an action for such damages.

*Wm. J. Ross* and *George K. Shellman,* for the appellees.

The will devised the tract of land in question to Mary for her life, then to George for his life, and after his death to be sold by his executors, and the proceeds distributed to his heirs (*i. e.* his children) according to the provisions of said will. When the insolvent trustee of George Harman sold his interest, the purchaser obtained only the interest which George had in this land, viz., an estate for his life, and he being admitted to be dead, and Christian

Harman, his co-executor, having declined to execute the trusts devolved upon him by the will and the death of Mary Harman and George Harman, viz., to sell said tract of land and divide the proceeds thereof, the Court was prayed to appoint a trustee to complete the trusts created by said will. *Code, Art.* 16, *sec.* 66.

The devise in the will of Christian Harman, deceased, cannot, by any mode of reasoning, be brought within the rule in *Shelley's Case.* The *land* was not devised to George Harman for life, and after his death to his heirs—but the land was devised to George Harman for his life, and after his death, *not the land,* but "the *proceeds* thereof" was to be equally divided between all his lawful heirs, first deducting the bequests already made, and when the others become equal, then the balance was to be divided between them, share and share alike.

And, by a latter clause of the will, the executors are empowered "to make public or private sale of any of my (the testator's) real or personal property to pay the bequests hereinbefore (in said will) made."

Here, then, there is a bequest of the *proceeds* of this three hundred acress of land after George's life-estate—*not the land itself*—to these persons who are designated as the heirs of George Harman, and a power of sale given to the executors to sell any of the testator's remaining real property to pay the bequests—which latter acts in aid of the legal intendment that, a disposition by will of the proceeds of the sale of land implies, and is equivalent to devising that the land be sold.

But, suppose it was a remainder in the land itself which was limited to the heirs of George Harman—in order to bring it within the rule in *Shelley's Case,* and make the word heirs a word of limitation and not a word of purchase, it is necessary that the persons who are designated by the term "heirs" shall take the same estate, and in the same manner as the law of descents would give them. *Hockley vs. Mawbey,* 1 *Vesey, Jr.,* 149.

In this State the law of descents gives to all the heirs in
equal degree, equal undivided interests in the land—but this
is utterly inconsistent and irreconcilable with the provisions
of the clause of the will under consideration.   It expresses
an intention utterly at variance with the law of descents, and
shows conclusively that the testator used the word '' heirs''
not in its technical, legal sense, and subject to all the legal
rules and inferences, but merely as a *designatio persona-
rum,* who were intended to have the property after the
death of George, namely : the children of George, to some
of whom legacies are given by the will ; or rather it shows,
with additional conclusiveness, that the *land* was not, by
said will, to descend at all, after the death of George, but
was to be sold, and the *proceeds* divided equally amongst
the heirs (*i. e.* the children) of George, after deducting
from the shares of such of them as took legacies by the
will, enough to make them all equal recipients of the tes-
tator's bounty.

As to the application of the rule in *Shelley's Case,* to
devises, and the solicitude with which the Courts of this
State will guard and effectuate the intention of the testator,
see *Chilton vs. Henderson,* 9 *Gill,* 436, 437.

The true and only rule for the application of the "rule
in *Shelley's Case,*" especially as applied to wills, is that,
where the devise gives an estate to a man for life, and after
his death, the land or real estate to his heirs, either gen-
erally, or without making any alteration as to the propor-
tion in which they are to take, or otherwise, different from
what they (the heirs) would respectively take under the
law of descents, then the rule, by making the word
'' heirs'' a word of limitation and not of purchase, annexes
the inheritance to the life-estate, and they become in fact,
one estate.

But in this case those who are designated by the term
''heirs,'' are not *by the will* to take in the same proportion
in which they would take by the law of descents—and,

indeed, are not to take the *land* at all—but according to the true construction of the will, and the intention of the testator, the land is to be sold, and the *proceeds* to be divided in the manner prescribed by the will.

The appellants contended that the bill, although it expressly charges "*irreparable injury*," does not show such injury as is irreparable, and that the defendants' answer, by denying that the injury is irreparable (although they do not deny the cutting of the timber from the land, as alleged in the bill) have sworn away the equity of the bill, and that the injunction must therefore be dissolved. And further, that if the appellees are entitled to any remedy, they have ample remedy in the Courts of law.

The bill charges "that Joseph Fulton is engaged, both personally and with a large force of employés, in cutting the timber growing on said land, and if not at once arrested by the Court, will cause an irreparable injury to the complainants and to said land, by entirely destroying the value of the same." The amended bill makes like charges against Elizabeth Fulton.

The answers of these defendants do not deny the facts alleged, but do deny that the injury is irreparable. This denial—not of the facts alleged, but of the effect which the bill attributes to them—does not, we apprehend, at all swear away the equity of the bill, as claimed by the appellants.

Then as to the sufficiency of the allegations of the bill in this respect. It is true that when an injunction is sought against a mere trespasser, or one holding and claiming adversely, it is necessary to allege facts constituting irreparable damage or other special circumstances. In this case we think the bill does set out such acts, in cutting and destroying the timber and utterly destroying the value of the estate, as are uniformly regarded by the Courts of equity in this State, as constituting irreparable injury. *Shipley vs. Ritter, et al.*, 7 *Md.*, 408, 413; *Davis, et al. vs. Reed*, 14 *Md.*, 152.

ALVEY, J., delivered the opinion of the Court.

In disposing of this case, upon the record as now before us, three questions are presented : .

1. Whether George Harman took a fee-simple estate in the land in controversy, under the will of his father, Christian Harman ; and if he did not, —

2. Whether a trustee or trustees should be appointed to sell such land for the benefit of those entitled in remainder under the will ; and,

3. Whether it was proper to grant an injunction to stay destructive trespass on the land until it could be sold for the benefit of those entitled to the proceeds of sale.

1. By the will under consideration, the testator devised to his wife, in lieu of dower, a tract of land containing about three hundred acres, during her life; and also gave to two of the children of his son George certain pecuniary legacies ; and after certain other bequests, he then devised and bequeathed all the rest of his property, real, personal and mixed, to his son George, *during his natural life,* and after his death the *proceeds thereof* to be equally divided between all his, George's, *lawful heirs;* "first deducting the bequests already made, and when the others become equal then the balance shall be divided between them share and share alike."

George Harman, the son, and Christian Harman, the grandson, of the testator, were appointed executors of the will ; and, by the last clause of the will, the testator empowered his executors to make public or private sale of any of his *remaining* real or personal property, to pay the bequests thereinbefore made.

The devise or bequest of all the rest of the testator's property, real, personal and mixed, included all reversionary interests however remote, which were undisposed of by the previous provisions of the will ; and hence the devise to his son George of all the rest of his property included the reversion in the tract of land of three hundred acres previously devised to his wife for life.

But notwithstanding the express terms in which the devise is made to George, that is, that it was for his natural life, it is contended for the appellant that this devise to George was enlarged to an estate in fee, in the land by reason of the remainder being limited to his "lawful heirs;" and that, consequently, it is a devise within the rule laid down in *Shelley's Case*, 1 *Co.*, 96. That rule is, " where the ancestor takes an estate of freehold by gift or conveyance, and in the same gift or conveyance an estate is limited either mediately or immediately to his heirs, in fee or in tail, the word heirs is a word of limitation of the estate, and not a word of purchase."

Here, as has been observed from the recital of the devise, the terms of the will are, as applied to both real and personal property, " and after his death," that is, the tenant for life, "*the proceeds thereof* shall be equally divided between all his *lawful heirs*," followed by words giving specific direction as to the mode of equalizing the distribution. This would seem to be wholly incompatible with the rule of descent; and unless that rule can apply to govern the succession, it is very clear that the devise is not within the rule of *Shelley's Case;* for the first principle of that rule is, that the freehold estate in the ancestor and the remainder limited to his heirs shall unite and become an entire estate in the ancestor, so that, if the ancestor die intestate, his heirs shall take by descent from him, and not as purchasers under the original limitation. *Tud. Lead. Cases*, 482. Where the limitation of the remainder is to the *issue* or *heirs* of him to whom the preceding estate for life is limited, if the term *issue* or *heirs* is clearly intended as descriptive merely of the persons to take in succession, and thus become the root of a new inheritance, the individuals embraced by such descriptive terms, take as purchasers, and do not, therefore, come within the rule in *Shelley's Case*. When the word heirs is taken as a word of limitation, it is collective, and signifies all the

descendants in all generations; but when it is taken as a word of purchase, it may denote particular persons answering the description at a particular time, and in a special sense, according to circumstances.   This is established by numerous authorities, and is plainly enough stated in the cases of *Horne vs. Lyeth*, 4 *H. & J.*, 431, *Lyles vs. Digges*, 6 *H. & J.*, 364, and *Ware vs. Richardson*, 3 *Md.*, 544; in addition to which cases, see *Tud. Lead  Cas.*, 493, and 2 *Washb. Real Pro.*, 559.

In the devise under consideration, as the words ''lawful heirs'' are followed by words of partition and distribution inconsistent with the devolution of the estate by inheritance, the estate for life cannot be enlarged to a fee-simple, by force of the terms ''lawful heirs;'' but the gift being of the proceeds, to be divided in a manner specially prescribed, the terms of the gift must be construed as clearly indicative of an intent to give a life estate only to the son George, with a gift over to those who may be embraced within the terms ''lawful heirs'' as purchasers.

In the case of *Hockley vs. Mawbey*, 1 *Ves.*, *Jr.*, 143, 149, Lord Chancellor THURLOW, in speaking of a devise to a party and his lawful issue, followed by the words, ''to be divided among them as he,'' the ancestor, '' should think fit,'' said : '' The limitation to the son and his issue would be an estate tail; and perhaps the aptest way of describing an estate tail according to the statute ; but it is clear, he did not intend it to go to them as heirs in. tail ; for he meant they should take distributively, and according to proportions, to be fixed by the son.   It has often been decided in other cases, besides those mentioned at the bar, that, where there is a gift in that way, the parties must take as purchasers ; for there is no other way for them to take.   The immediate consequence of that is, that R., the son, could only take for life, and the consequence of that is, that this is a gift to the wife for life, then to the son for life ; and after to his issue, in such distribute shares as

he should appoint." This case of *Hockley vs. Mawbey*, is referred to, and the principle decided by it clearly announced, in the case of *Horne vs. Lyeth*, 4 *H. & J.*, 436, citing and relying also upon the case of *Jacob vs. Amyatt*, 4 *Bro. C. C.*, 542.

Here the gift to the "lawful heirs" of the son George is of the proceeds, to be distributed in the manner directed by the testator himself; hence, those answering the description must, for the reasons stated by Lord THURLOW, take as purchasers. Whether this devise of the proceeds should be regarded as equivalent to a devise of the land itself, upon the same principle that a devise of the "rents and profits" of land is equivalent to a devise of the land itself, it is not necessary now to decide. Upon this question, see the cases of *Doe dem. Goldin vs. Lakeman*, 2 *B. & Ad.*, 30, and *Cassilly & Wife vs. Meyer*, 4 *Md.*, 1. Nor do we deem it necessary to decide, as the case is now presented, at what time the conversion from realty to personalty should be regarded as having taken place; whether from the death of the testator, or the expiration of the particular estates, with respect to the gift of the proceeds to the "lawful heirs" of George. But, by fair construction of the terms employed, in order to obtain the end which the testator had in view, that is, the distribution of the proceeds among the parties designated, these terms must be taken to amount to a direction to sell the land, either subject to the life estates, or after the death of George. *Green vs. Belchier*, 1 *Atk.*, 506. Whether at the one time or the other is now immaterial ; as it is conceded that the life estates have terminated.

Being thus of opinion that George Harman, the son, under the residuary clause of his father's will, took but a life estate in the tract of land that had been devised to the testator's wife for life, of course, neither he, nor his insolvent trustees, could sell more than he was entitled to under the will. Hence Mrs. Fulton, the present claimant of the

land, can derive no valid title through George Harman, or his insolvent trustees, of a greater value or extent than that owned by George Harman, that is to say, an estate that terminated with his natural life.

2. Having thus concluded with respect to the estate of George Harman, the next question is, whether, upon the present application, a trustee or trustees may be appointed by the Court to sell the land as contemplated by the will. And upon this question we cannot perceive room for doubt.

By the Code, Art. 16, sec. 66, it is provided that where any person dies, leaving real or personal property to be sold for the payment of debts, or *other purposes*, and shall not appoint any person to sell and convey the same, or if the person appointed dies, or neglects or refuses to execute such trust, the Court, upon the petition of *any person* interested in the sale of such property, may appoint a trustee to sell and convey the same, and apply the money arising from the same to the purposes intended.   The proceedings under the provision of the statute have generally been of a less formal character than the present, and most generally *ex parte.   Hammond vs. Hammond*, 2 *Bland*, 221; *Dorsey vs. Thompson*, 37 *Md.*, 46.  It is not required that all the parties interested in the sale should join in the application for the appointment of a trustee under this statutory provision ; but the Court may appoint a trustee and . direct a sale upon the application of only a part of those interested.   *Shriver's Lessee vs. Lynn*, 2 *How.*, 43. If, therefore, it be true as alleged, that George Harman is dead, and that Christian Harman, the other executor, though living, declined and refused to execute the trust under his grandfather's will, the case is clearly within the provision of the statute, and the Court could rightfully appoint a trustee to make sale of the property under the will.

3. The only other question presented is that in regard to the injunction to restrain the destruction of timber on

the land, pending the proceedings for the appointment of trustees to make sale of the land under the will.

As to the first injunction, that issued on the original bill, against Joseph Fulton, the propriety of the order awarding that writ is not before us, as the record does not contain the original bill, but only the amended bill upon which an injunction was ordered as against Elizabeth Fulton, the wife of Joseph Fulton. But as to this latter injunction, we think, under the facts and circumstances disclosed, it was properly issued. The trespass complained of went to the destruction of that which is essential to the value of the estate, and to the destruction of the estate itself, in the character in which it has been enjoyed. The case of *Shipley vs. Ritter*, 7 *Md.*, 408, is ample authority to authorize the injunction in this case.

The record transmitted to this Court is exceedingly defective, containing neither the original bill, the order thereon for injunction, nor the answers of some of the defendants, and it is entirely destitute of all proof. Whether there was any proof taken does not appear. The main object of the present appeal seems to be to obtain a construction of the will of Christian Harman ; but as the case is now presented by the record in this Court, we can neither affirm nor reverse the decree appealed from, but must remand the cause, under the Code, Art. 5, sec. 28, that the omissions in the record may be supplied, and further proceedings had, as authorized by the provision of the statute referred to.

*Cause remanded, under*
*Code, Art. 5, sec. 28.*

(Decided 7th March, 1876.)