THOMAS H. KENSETT, JR., *vs.* SAFE DEPOSIT AND TRUST COMPANY OF BALTIMORE, Trustee. ZILLAH A. KENSETT *vs.* SAFE DEPOSIT AND TRUST COMPANY OF BALTIMORE, Trustee.

*Fiduciary relations: voidable deeds; trust company officials; mother of grantor; wife's inchoate right of dower.*
*Rule in Shelly's Case. Words merely*
*descriptio personarum.*

Where those relations exist by means of which a person is able to exercise a dominion over another, Courts will annul transactions under which a person possessing that power takes a benefit, unless he can show that the transaction was a righteous one.    p. 531

A deed of trust by which a very young man and his wife provided that after paying the expenses, including commissions to the trustee, the latter should pay over the balance of the income to the grantor and his wife, or either of them and upon the death of the survivor the property to vest in the next of kin of the grantor, it was held that the deed

should be considered in the light of this principle, as regards the officers of the trust company and the mother of the grantor, in spite of the fact that the deed was for only a part of the grantor's property, that it contained a revocation clause, and that the trustee and the mother, who was the then expectant next of kin, had but a small interest in the deed.                                                                p. 532

As the deed appeared in this case to be righteous and to be the free and voluntary act of the grantors, it should be upheld.

p. 536

Where a deed of trust by a husband, in which the wife joins, provides that the income shall be paid to the grantors or either of them, and to the survivor for life, the wife can not be heard to complain that the deed destroys her inchoate right of dower in a ground rent issuing out of a lot of ground included in the property so conveyed.          p. 537

Where a deed of trust provides that the trustees are to pay to the grantor or his wife or either of them the income of the property, after paying the expenses and commissions to the trustee, and upon the death of the survivor the property is to vest in "such persons as would by the now existing law be the next of kin of the grantor;" it was held that under all the circumstances of the case these words determined particular persons answering the description at a particular time and in a special sense, and were merely *descriptio personarum* and that the Rule in Shelly's Case did not apply.

p. 540

The Rule in Shelly's case is not a favored one in Maryland, although the Court will not refuse to apply it in a proper case.                                                                    p. 540

Where it is not the particular intent of the grantor to use the words of inheritance in their full legal sense, those words in the connection in which they are used, yield to that intent, thereby withdrawing the case from the application of that rule.                                                          p. 540

*Decided December 8th, 1911.*

Two appeals from the Circuit Court of Baltimore City (HEUISLER, J.).

The two causes were argued together before BOYD, C, J., PEARCE, BURKE, THOMAS, PATTISON, URNER and STOCK-BRIDGE, JJ.

*John L. Sanford*, for the appellant, Zillah A. Kensett.

*Henry H. Dinneen* (with whom was *Robert W. Beach* on the brief), for the appellant, Thos. H. Kensett, Jr.

*J. Burger* and *John Hinkley* (with a brief by *Hinkley, Spamer & Hiskey*), for the appellee.

PATTISON, J., delivered the opinion of the Court.

On the tenth day of June, A. D. 1910, the appellants, Thomas H. Kensett, Jr., and Zillah A. Kensett, his wife, by an instrument of writing dated as of that date, "did grant and convey, assign and set over unto (the appellee) the Safe Deposit and Trust Company of Baltimore, its successors and assigns" certain stocks and bonds therein named which were delivered to said Trust Company, and also "all the estate, right, title and interest of every kind whatsoever of the said Thomas H. Kensett, Jr., and Zillah A. Kensett, his wife, in and to a lot of ground" situated in Baltimore City, "together with the yearly rent of two thousand dollars issuing thereout" * * * "and which said rent has been decreed to be sold in the case of said *Trust Company* v. *Kensett,* in the Circuit Court for Baltimore City," the deed stating the "intention hereby being to include the interest of the said grantors in the proceeds of sale together with the rights and appurtenances thereunto belonging or in anywise appertaining. To have and to hold the said property hereby granted and conveyed unto the said Safe Deposit and Trust Company of Baltimore, trustee, its successors and assigns, in trust and confidence nevertheless, upon the trusts and with the powers and limitations following, that is to say: to collect the rents, interest, income, dividends and profits thereof, and after paying thereout all expenses, including a commission of five per cent. to said trustee, to pay over the net income unto the

said Thomas H. Kensett, Jr., and the said Zillah A. Kensett, his wife during their respective lives or unto either of them in the discretion of said trustee, in quarterly payments or oftener, and from and after the death of the survivor of the said Thomas H. Kensett, Jr., and Zillah A. Kensett, his wife, the corpus of said trust estate shall vest in and become the property of such persons living at the time of the death of said survivor as would by the now existing laws of the State of Maryland be the next of kin of the said Thomas H. Kensett, Jr., with power to the said Thomas H. Kensett, Jr., at any time after the tenth day of June, A. D. 1914, to revoke the trust as to all or any parts of said trust property hereby created, and to require a reconveyance thereof to him by the said trustee, or its successors, or to make any modification or variation of the terms of said trust by an instrument of writing to be executed under his hand, and seal and delivered to the said trustee or its successors in office; with power to the said trustee and its successors in office at any time without application to any Court and as often as necessary during the continuance of the trust for the purpose of changing investments, or upon the temination of the trust for the purpose of making division and distribution of the principal of the trust estate, should such division be necessary, to sell, exchange and transfer all or any portion or portions of the trust estate, and to make division in kind, if such division is necessary for the purpose of distribution," etc.

On October 3rd, 1910, Thomas H. Kensett, Jr., filed his bill in the Circuit Court of Baltimore City against the appellee company and his wife, Zillah A. Kensett, asking that the aforesaid deed be declared null and void, and that the defendant be directed to deliver the property transferred to it (by said instrument) to the possession of the plaintiff.

The bill alleges that he executed the deed at the request and solicitation of his parent and friends and officers of the appellee company and that at the time of its execution he was inexperienced "in matters of that kind" and was

VOL. 116                    34

influenced to execute it without comprehending its legal effect, and did not realize that he thereby placed in the hands of said appellee company, as trustee, the exclusive right to control the disposition of the income from his property, nor did he comprehend that under the deed the trustee could without his acquiescence deprive him of the use and enjoyment of all or any part of the income whatsoever.

The bill also alleges that by a proper construction of the deed or instrument or writing the trust created thereby was revocable at the option of the appellant and his wife, because, as it alleges, the language therein employed reserved the entire equitable estate in said property in the appellant and his wife, the trust company, trustee, retaining the bare legal right thereto.

The defendant company filed its answer denying that the trust created by the deed aforesaid was revocable at the option of the plaintiff and his wife, but averred that the trust is to continue under the terms set forth in said deed. The answer also denies that the appellant "was influenced to execute said deed without comprehending the legal effect thereof, and it avers and charges that both he and his wife did comprehend the legal effect of said deed and did realize and know the full effect of the same and the control that he gave these respondents over the disposition of the income."

The other defendant, Zillah A. Kensett, the wife, filed an answer and cross-bill. She admits the execution of the deed with her husband, but alleges that she, being ignorant of business and unacquainted with legal forms, was induced to sign said deed by the importunities of her husband and the representations made to her by him that he was giving to her thereby an absolute one-half interest in said fund and in case he should predecease her the entire amount of said fund would be hers. And furthermore, that the irrevocability of said deed was never mentioned or explained to her by the officers of the defendant company. She further alleges that she is in a destitute condition and has been compelled to earn a precarious and inadequate living on the stage.

That she is willing that the deed of trust be revoked and that the Court assume jurisdiction of said fund now held by the defendant company, and that it be distributed between herself and husband as it may seem to the Court right and proper.

The Court below upon hearing testimony upon the issues joined, dismissed both the bill of Thomas H. Kensett, Jr.. the husband, and the cross-bill of Zillah A. Kensett, the wife. It is from the order dismissing the bill and cross-bill that these appeals are taken.

As stated in *Whitridge* v. *Whitridge,* 76 Md. 73: "The rule in cases of this description is this—Where those relations exist by means of which a person is able to exercise a dominion over another, the Court will annul a transaction under which a person possessed of that power takes a benefit unless he can show that the transaction was a righteous one. It is very difficult to lay down with precision what is meant by the expression 'relation in which dominion may be exercised by one person over another.' That relation exists in the cases of parent, of guardian, of solicitor, of spiritual adviser and of medical attendant, and may be said to apply to every case in which two persons are so situated that one may obtain considerable influence over the other. The rule of the Court, however, is not confined to such cases. LORD COTTENHAM considered that it extended to every case in which a person obtains by donation a benefit from another to the prejudice of that other person and to his own advantage, and that it is essential in every such case, if the transaction should be afterwards questioned, that he should prove that the donor voluntarily and deliberately performed the act, knowing its nature and effect. It is not possible to draw the rule tighter or to make it more stringent, and I believe it extends to every such case." JUDGE McSHERRY, in speaking for the Court in that case, further stated: "It is the firmly settled law of Maryland that a gift or voluntary conveyance between living parties standing in the confidential relation of parent and child is *prima facie* void, and when

assailed by the donor or grantor, can only be upheld if satis-
factorily proved to have been the free, voluntary, and
unbiased act of the person who made it."

Those, in this case, who were charged with the exercise of
dominion over the appellants in the execution of the deed of
trust, are the officers of the appellee company and Kensett's
mother. It will be seen that the advantage to be acquired
under this deed of trust by the appellee company consists
only of the commissions they are to receive, as provided for
in the deed, and the benefits or advantages accruing there-
from to the mother, as one of the next of kin, are indeed
remote, considering her age in connection with that of the
appellant, her son; his right to revoke the trust at the end
of four years; and the possibility of issue born to him, with
other facts that may well be weighed in considering the
improbability of his mother being benefited by the execu-
tion of this deed. Thus it will be seen that the rule is
tightly drawn when applied in this case, but, nevertheless,
we will consider it in the light of this rule.

It is not shown nor is it alleged that any fraud or deception
was practiced or attempted to be practiced by anyone upon
either Mr. or Mrs. Kensett in the execution by them of the
deed of trust in this case. It is alleged by Kensett that he
being "inexperienced in matters of this kind" was influenced
to execute the deed without comprehending its legal effect,
and did not realize that he had placed in the hands of the
defendant company, as trustee, the exclusive right to control
the disposition of the income of said property, and did not
comprehend that under this instrument the trustee could,
without his acquiescence, deprive him of the use and enjoy-
ment of all or any part of the income therefrom."

The appellant, Thomas H. Kensett, Jr., was married in
1908 at the age of nineteen years. Two years thereafter, on
the tenth day of June, 1910, he reached the age of twenty-
one years, at which time the appellee company, as trustee
under the will of Thomas Kensett, his grandfather, held
for him certain property, including the property mentioned

in the deed of trust in this case, and also held for him as guardian about one thousand dollars in cash. The amounts so held by it as trustee and guardian amounting in the aggregate to about fifteen thousand dollars, to the possession of which he was then entitled. Early in the morning of that day he called upon his trustee and guardian, the trust company, for the purpose of receiving his estate. It was while at the office of the company and on that occasion that he with his wife executed the deed of trust involved in these proceedings.

It is shown by the testimony of Mr. Marshall, vice-president of the defendant company, that when on the occasion of Kensett's visit to the office of the appellee company, he suggested to him, by reason of his extravagant habits, that he make a deed of trust, Kensett replied at once "Yes, I do want to make a deed of trust, it is a matter *I had thought of myself*. My mother and other members of the family have told me it would be wise for me to execute a deed of trust," and that *he had made up his mind that he would create some trust* whereby a portion of his estate would be retained for him until he arrived at the age of twenty-five years.

It seems from his testimony that his mother had suggested that he make a trust lasting for ten years. This suggestion, however, he rejected, for in his testimony he was emphatic in saying that he would not make a trust for longer than four years, or until he reached the age of twenty-five years, nor would he put his entire estate in the trust. Whatever Mr. Marshall may have suggested, he persistently adhered to his own determination, formed, as it appears, prior to his going to the office of the defendant company, that he would make the trust for four years and no longer, and would put in trust only a part of his property.

It is shown from the testimony of Mr. Burger, of the law firm of Hinkley, Spamer and Hisky, who prepared the deed, by Mr. Marshall and Mr. Gibson, assistant secretary of the

appellee company, as well as by the testimony of the plaintiff, that he (Kensett) knew and understood the provisions and terms of the deed.  Messrs. Burger, Marshall and Gibson all testified that it was read over to him several times, item by item, and the details thereof fully explained to him as well as to his wife, and that they said they understood them.

Mr. Burger states that Kensett told him that the trust was to last for four years, until 1914, at which time he would be twenty-five years of age.  He also told him how the income and profits from the estate should be disposed of, and what disposition should be made of the *corpus* or principal after the death of the survivor of them and states that from the detailed directions so given to him by the appellant he prepared the deed, and after the deed was written as directed by the appellant, he explained to both Mr. and Mrs. Kensett that the trust would last for four years and it could be revoked after that time, and that during its continuance the trustee could pay the income to either or both of them, and that upon the death of the survivor of them, the property would go to the next of kin of Thomas H. Kensett, Jr. And they were further told by him that what was placed in the deed of trust would be tied up for four years and during that time he could not get any of it even should he need it. Kensett then stated that he owed a great many debts; one was for an automobile that he had recently bought and had not yet paid for, and "that he must have more cash or money with which to pay such debts; that he also contemplated going into business and he would need some money, four or five thousand dollars clear."  Therefore certain items in the deed were stricken therefrom and the deed was then executed and acknowledged by both Mr. and Mrs. Kensett.  The amount of property placed in the trust estate was about one-half of the entire estate, or about $7,500.00; the balance of the estate was paid or turned over to the appellant, a part of such balance on the date of the execution of the deed and the remainder in two months thereafter.

As Mr. Marshall testified, "Mr. Kensett worked out the whole thing himself. The deed was not according to my idea. If the boy had followed my views, my advice, he would have created a trust that would have been continuous throughout his life." And although the plaintiff testified that he was uneducated, did not know what he was signing, did not know one paper from another, nevertheless he stated in his testimony that upon the day he went to the office he "expected to sign over for some little of his money," and when he arrived at the office of the company it was he who suggested the period for which the trust was to last. And in his testimony he further states that one thing he could remember and that was "I told them at my death she (his wife) was to get the income of the principal until her death, and then the principal was to go back to my family, meaning my mother." And when asked if he understood that the defendant company, as trustee, could pay the income to him to the exclusion of his wife, or to his wife to the exclusion of him, he replied saying, "I remember they could pay the income to whoever they wanted, either to my wife or to me." These were the important provisions of the deed and these, it seems by his own testimony, he thoroughly understood.

The righteousness of the transaction is beyond question. With his habits of extravagance disclosed both before and after the execution of the deed, the execution of it was certainly beneficial to him, and with us there is no difficulty in arriving at the conclusion that the execution of the deed was his free and voluntary act.

In the cross-bill of the appellant, Mrs. Kensett, she alleges that being ignorant of business and unacquainted with legal forms, she was induced to sign the deed of trust by the inopportunities of her husband, Thomas H. Kensett, Jr., and by the representations made to her by him that he was giving her thereby an absolute one-half interest in said fund, and should he predecease her the entire amount of said fund

would be hers. Furthermore, that the alleged irrevocability of the said deed of trust was never mentioned or explained to her by the officials of the defendant company. Nowhere in her testimony do we find her saying that her husband, Mr. Kensett, promised to give her an absolute on half interest in the fund, as stated in the bill. The reasons she assigned in her testimony for joining her husband in the execution of the deed was because her husband had asked her to do so, saying she would be looked out for, and she thought it was right for her to sign it.

As to the allegation that the irrevocability of the deed was never explained to her, we have the testimony of Messrs. Burger, Marshall and Gibson, in which all of them state that the irrevocability of the deed of trust, together with its other features were fully explained to her, as well as to her husband, and all of which she said she understood.

At one time prior to the execution of the deed Kensett held an undivided one-twelfth interest in a ground rent in the City of Baltimore, which is referred to in the bill, and his rights therein are included within the property conveyed by the deed of trust. This ground rent, however, several years ago and prior to the marriage of the appellants, was decreed to be sold for partition, and the appellee company was appointed trustee to make sale thereof, but for reasons assigned by its officers in their testimony, the property is still unsold and the rents and income therefrom are still collected by the appellee company and accounted for by it to the parties entitled thereto, including the appellant, Thomas H. Kensett, Jr.

It is contended for by the appellant, Mrs. Kensett, that in as much as no sale has been made of the property, that she had at the time of the execution of the deed of trust, an inchoate right of dower therein to the extent of the one-twelfth interest held by her husband, and she states in her testimony that she was not informed by the officers of the appellee company of her rights therein, nor did she at the time know of them.

By the appellee it is contended that no such inchoate right of dower existed. "The decree (as it contends) made before the marriage was good, and a sale made under that decree will be good, notwithstanding the subsequent marriage, and the right which the wife acquired by the marriage after the decree, would be a right to a portion of the proceeds of sale in commutation of her inchoate right of dower." This, we think, was the extent of her interest therein.

If, however, we should take the view of the appellant and should hold that she had at the time of the execution of the deed an inchoate right of dower in the real estate mentioned, the existence of which was not made known to her by the appellee company and of which she had no information, and that by such deed she conveyed such inchoate right of dower to the appellee company, we do not think this would entitle her to a revocation of the deed of trust. Had she not conveyed it, no benefit would have accrued to her therefrom until the death of her husband, when she would have been entitled to one-third of the rental of said one-twelfth interest therein for and during her life while by the terms of the deed, upon the death of her husband, she is to get the entire rental from said interest, as well as the interest and income from the balance of the estate, so long as she may live; and moreover by the terms of the deed, the net income from the entire estate during the joint lives of Mr. and Mrs. Kensett, was, at the discretion of the trustee, payable to either of them, a part of which income and interest, as shown by her testimony, she has been receiving since the execution of the deed. Thus she is not injured by joining her husband in the execution of the deed conveying thereby her alleged inchoate right of dower in such property, but is greatly benefited thereby.

It is also contended by the appellant that by a true construction of the deed in this case under the rule in *Shelley's case* or principles analogous thereto, the appellant, Thomas H. Kensett, Jr., holds, by equitable title, the entire interest

in the property conveyed by the deed and that he is entitled to have the trust declared to be at an end and the legal title conveyed to him.

Our predecessors in the case of *Horne* v. *Lyeth*, 4 H. & J. 431, said: "If the words 'heirs of the body' are followed by words of partition or distribution, the estate for life shall not be enlarged, by the force of the expression 'heirs of the body,' but the words of partition will be construed as indicative of an intent to give a life estate to the first devisee. *Jacobs* v. *Amyatt*, 4 Bro. Ch. Rep. 542." And in the case of *Fulton* v. *Harman*, 44 Md. 251, the testator, after making certain devises and bequests, devised and bequeathed all the rest of his property, real, personal and mixed, to his son, George, during his natural life, and after his death the proceeds thereof to be equally divided between all his, George's lawful heirs; "first deducting the bequests already made and when the others became equal, then the balance shall be divided among them share and share alike." This Court in that case said: "Where the limitation of the remainder is to the issue or heirs of him to whom the preceding estate for life is limited, if the term issue or heirs is clearly intended as descriptive merely of the persons to take in succession, and thus become the root of a new inheritance, the individuals embraced by such descriptive terms, take as purchasers, and do not, therefore, come within the rule in *Shelley's case*. When the word heirs is taken as a word of limitation, it is collective, and signifies all the descendants in all generations; but when it is taken as a word of purchase, it may denote particular persons answering the description at a particular time, and in a special sense, according to the circumstances." * * * "As the words 'lawful heirs' are followed by words of partition and distribution inconsistent with the devolution of the estate by inheritance, the estate for life cannot be enlarged to a fee-simple, by the force of the term 'lawful heirs,' but the gift being of the proceeds, to be divided in a manner specially prescribed, the

terms of the gift must be considered as clearly indicative of an intent to give a life estate only to the son George, with gift over to those who may be embraced in the term 'lawful heirs' as purchasers."

In *Clarke* v. *Smith*, 49 Md. 116, the Court there said: "It is said to be a well settled rule of construction that technical words of limitation used in a devise, such as *heirs* generally or *heirs of the body*, shall be allowed their legal effect unless from subsequent *inconsistent* words it is made perfectly plain that the testator meant otherwise. Or to use the language of LORD ELDON in *Wright* v. *Jesson*, 2 Bligh, 1, the words heirs of the body will indeed yield to a particular intent that the estate should be only for life and that may be from the effect of superadded words of any expression showing the particular intent of the testator, but that must be clearly intelligible and unequivocal."

In this case the deed provides that from and after the death of the survivor of those who, while living, receive the income and profits of the estate, "the corpus of the said trust estate *shall vest in and become the property of such persons living at the time of the death of the said survivor as would by the now existing laws of the State of Maryland, be the next of kin of the said Thomas H. Kensett, Jr.* Added to this is the further provision, *"With power to the said trustee, * * * upon the termination of the trust, for the purpose of making division and distribution of the principal of the trust estate, should such division be necessary, to sell, exchange and transfer all or any portion or portions of said trust estate, and to make division in kind, if such division is necessary for the purpose of distribution."*

It will thus be seen that provision is made, after the termination of the trust, for the distribution, by the trustee, of the trust estate either by a sale of the property by it for that purpose or by a division in kind, to be made by it, among the next of kin of the said Thomas H. Kensett, Jr., by the now existing laws. In this and other respects the

case before us differs from the case of *Raffel* v. *The Safe Deposit Company,* 100 Md. 141, relied upon by the appellant.

We think from the language of the deed considered as a whole, the words "Such persons as would by the now existing laws be the next of kin of the said Thomas H. Kensett, Jr.," are words of purchase and not words of limitation. That such words, considered in connection with the succeeding provisions in relation to the distribution of the estate, denote particular persons answering the description at a particular time and in a special sense, and that the language and provisions of the deed plainly manifest a particular intent to use those words as merely *descriptio personarum,* or a particular designation of individuals who are to take as purchasers by distribution at the death of the survivor of Thomas H. Kensett, Jr., and his wife. *Hall* v. *Gradwohl,* 113 Md. 300.

The rule in *Shelley's case* is not a favored rule of law in Maryland, although the Court will not refuse to apply to it in a proper case. But where, as here, the particular intent of the grantor is not to use the words of inheritance in their full legal sense, those words in the connection in which they are used in the deed should yield to that intent, thereby withdrawing the case from the application of that rule. *Hall* v. *Gradwohl, supra.*

From what we have said, we find no error in the ruling of the lower Court in dismissing the bill of Thomas H. Kensett, Jr., and the cross-bill of Zillah A. Kensett, his wife, from which these appeals were taken. We will therefore affirm the decree in each case.

*Decree affirmed, with costs to the appellee.*