# WALTER W. RHODES et al. *v.* ZORO H. BRINSFIELD.

*Construction of Devise—Rule in Shelley's Case.*

A devise of land to T. and W. "for and during the respective terms of their natural lives only, and at the death of the said" T. and W., the one-half of the land "to be equally divided among the heirs at law of" T. and "the remaining half to be equally divided among the heirs at law of" W., in fee simple, *held,* under the rule in Shelley's case, to create a fee simple estate in T. and W.

*Decided November 17th, 1926.*

Appeal from the Circuit Court for Dorchester County (Bailey, J.).

Action by Walter W. Rhodes and others against Zoro H. Brinsfield. From a judgment for defendant, plaintiffs appeal. Affirmed.

The cause was argued before BOND, C. J., URNER, ADKINS, OFFUTT, DIGGES, PARKE, and WALSH, JJ.

*William N. Andrews,* for the appellants.

*Emerson C. Harrington,* with whom was *Emerson C. Harrington, Jr.,* on the brief, for the appellee.

OFFUTT, J., delivered the opinion of the Court.

This appeal is from a judgment of the Circuit Court for Dorchester County in favor of the defendant, in an action brought against him by the appellants, claiming as devisees under the will of Richard Rhodes, late of Dorchester County, deceased.

Richard Rhodes died in 1883, leaving a last will in which he devised to Thomas and William L. Rhodes, his two nephews, certain real property located in that county, "to them the said Thomas Rhodes and William L. Rhodes for and during the respective terms of their natural lives only, and at the death of the said Thomas Rhodes and William L. Rhodes, the one-half of all the above devised lands shall be equally divided among the heirs at law of the said Thomas Rhodes, and the remaining half to be equally divided among the heirs at law of the said William L. Rhodes, in fee simple." Thomas and William held and occupied the property jointly until the death of Thomas, and after that his heirs at law, a widow and six children, occupied it jointly with William until 1901, when Mamie Rhodes, one of the children of Thomas, conveyed her interest to Zoro H. Brinsfield, and later James E. and Bessie Rhodes, other children of Thomas, and William, the surviving devisee, conveyed their interests in the property to him. On November 24th, 1903, Brinsfield, during the lifetime of William L. Rhodes, filed a bill *quia timet* against his children, the appellants, all

of whom, excepting Herbert, were infants, in which he asked
that the devise to Thomas and William be construed, under
the rule in Shelley's case, to have vested a fee simple estate
in the said William and Thomas, nephews of the testator.
The infant defendants were summoned and answered by
guardian *ad litem.* The case was tried in due course and, at
the conclusion of the trial, the court decreed that Thomas
and William took "an undivided one-half of the lands" de-
vised to them by the fourth item of the will of Richard
Rhodes. After that Brinsfield reconveyed to James the inter-
est he had acquired from him, and James thereupon filed a
bill for the sale of the property, in lieu of the partition there-
of, against Brinsfield and those of the heirs at law of Thomas
Rhodes who still held an interest therein. A decree for the
sale of the property in lieu of partition was in due course
entered, under which Zoro H. Brinsfield was appointed trus-
tee, and he, on October 1st, 1904, sold and conveyed it to
D'Arcy Brinsfield, his son, who in 1911 reconveyed it to
him. William L. Rhodes died in or about the year 1921,
intestate, leaving as his only heirs at law seven children, the
appellants in this case, who on January 23rd, 1924, brought
this suit. There were several declarations filed in the case,
the last of which, the one under consideration in this court,
was filed on February 9th, 1925. In it, in addition to the
facts stated above, it is alleged that the defendant, from the
date of the purchase of the property by his son, used and
occupied the property as his own, cut and sold the timber
growing thereon, and sold a "great portion" of the real estate
as well, for which sales he refused to account to the plain-
tiffs. The court sustained a demurrer to that declaration,
with leave to amend, but the plaintiffs declined to amend,
and judgment was accordingly entered for the defendant for
costs.

The appellants' theory of the case is that, under a proper
construction of the will of Richard Rhodes, his nephews,
William L. and Thomas, took only a life interest in the prop-
erty devised to them, and that at his death the fee in that

portion of the estate devised to William vested in the appellants, his heirs at law, and that the deed from William to Brinsfield did not convey anything more than an estate for the life of William in one-half of the property devised by the fourth clause of the will of Richard Rhodes, and could not affect the interests of the appellants in the property.

The defence is twofold, first, that the question is *res adjudicata,* since it was directly in issue in the equity proceeding brought by Brinsfield in 1911 to quiet title to the property, to which proceeding all the appellants were parties, and, second, that, under the rule in Shelley's case, William and Thomas took a fee simple estate in the property, and that the appellants never had any interest therein.

The rule in Shelley's case was, when the rights of the parties to this proceeding accrued, a part of the law of this State. *Ware v. Richardson,* 3 Md. 505; *Waller v. Pollitt,* 104 Md. 172. And where it is applicable "it will control the operation of the grant, and vest the whole estate in the ancestor, though the instrument declares he shall have only a life estate" *Thomas v. Higgins,* 47 Md. 450. It is not a "rule of interpretation, but an inflexible rule of property, and is not deemed a means whereby the intention may be ascertained, but one of imperative obligation." *Devlin on Deeds,* p. 1546. And where it is recognized it will overcome the "expressed intention of the grantor." 18 *C. J.* 320. As originally stated, the rule is: "When the ancestor by any gift or conveyance, taketh an estate of freehold, and in the same gift or conveyance, an estate is limited, either mediately or immediately, to his heirs in fee or in tail, the heirs are words of limitation of the estate, and not words of purchase." 1 *Coke,* 104. The word "limitation" as used in that statement of the rule is equivalent to a definition or description of the estate granted, and the word purchase includes "every mode of acquisition of estate known to the law, except that by which an heir on the death of his ancestor becomes substituted in his place as owner by operation of law." *Bouvier's Law Dict.,* p. 2771. The distinction between "limitations"

and "purchase" is clearly and precisely stated by Mr. Tiffany in this language: "The language, in a deed or other instrument conveying or creating an estate, which by express language or by implication indicates the *quantum* or duration of the estate created, is termed the 'limitation of the estate,' as fixing its limit. Accordingly, words which serve to indicate the duration of the estate are called 'words of limitation,' and are to be distinguished from 'words of purchase,' which state the person or persons intended to take the estate or estates limited." *Tiffany on Real Property,* par. 18. While the rule has never been favored in this state (*Kensett v. Safe Dep. & Tr. Co.,* 116 Md. 540), and has now been repealed (Acts 1912, ch. 144), nevertheless, in cases where it is clearly applicable it will be enforced. *Kensett v. Safe Dep. & Tr. Co., supra; Waller v. Pollitt, supra.* And in our opinion it undoubtedly applies to the facts of this case. The use of the word "only" in the phrase "for and during the term of their natural lives only" cannot defeat the operation of the rule, for, in cases where the words "heirs" or "heirs of the body" are used, as in this case, "they will be construed to limit or define the estate intended to be conveyed, and will not be treated as words of purchase, and no supposed intention on the part of the testator or grantor arising from the estate being conveyed, in the first instance, for life, will be permitted to control their operation as words of limitation. In all such cases the estate becomes immediately executed in the ancestor, who becomes seised of an estate of inheritance. By force of the unbending construction given to these terms, it imputed to the grantor or testator, in legal contemplation, an intention to use the terms in their legal sense, and to give them their legal effect, though it should defeat even a real intention to the contrary. In other words, they are regarded as conclusive evidence of the intent of the testator." *Ware v. Richardson, supra. Tiffany on Real Property,* par. 537. Nor is there any force in the contention that the rule does not apply because the devise provided that "at the death of the said Thomas Rhodes and William L. Rhodes, the one-

half of all the above devised lands shall be equally divided
among the heirs at law of the said Thomas Rhodes, and the
remaining half to be equally divided among the heirs at law
of the said William Rhodes," for it is impossible to distin-
guish in principle a case where land is granted to two ances-
tors for their respective lives, and at their death their shares
therein respectively to their respective heirs at law, as in
*Thomas v. Higgins, supra,* and this case, and it is, in our
opinion, controlled by that decision. Nor can the fact that
the devise provides that the lands shall be "equally divided"
prevent the application of the rule, because those words refer
obviously to the division of the land, and not to a division of
the proceeds of a sale thereof. It is not disputed that if the
devise had been generally to the heirs of Thomas and Wil-
liam that the rule would apply, but, it is said, it does not
apply, because by designating the heirs of Thomas and Wil-
liam separately, the testator intended to create "classes" to
take at the death of Thomas and William, respectively. But
in a sense every devise to the "heirs" of an ancestor creates a
class, but not, unless that word is qualified in some way, such
a class as will prevent the application of the rule, and it is
not clear how a devise to an ancestor for and during his life
of the one-half undivided interest in land, with remainder
equally to his heirs, differs in principle from a similar devise
to him of the entire interest in such land, with remainder to
be equally divided among his heirs. In *Clarke v. Smith,* 49
Md. 106, the devise was to Robert "during the term of his
natural life, and no longer, and after the death of said son,
I give and devise the said farm to his heirs lawfully begotten
forever, to be equally divided between them," and the Court
in that case said "it is equally clear, that the terms 'to be
equally divided between them' have no such effect as to re-
strain the operation of the words 'heirs of the body' and con-
vert them into words of purchase." The only cases in which
the intention of the testator is relevant or material in deter-
mining whether such words as "heirs," "heirs of the body"
and the like, are words of limitation or words of purchase,

is where the meaning of such words is made ambiguous by
some qualifying expression in the instrument itself, which
clearly and definitely indicates that the testator intended
those words to identify and describe definite persons.    But
the words "equally divided" cannot in our opinion have any
such effect, because "it is quite clear then, if there was noth-
ing more than the negative or restrictive words connected
with the gift for life, and the direction that the estate, when
it devolved on those in remainder, should be equally divided
among them, an estate of inheritance would be executed in
the first devisee." *Clarke v. Smith,* 49 Md. 119.

Counsel for the appellants contends very earnestly that an
examination of the entire will discloses an intention to desig-
nate the respective heirs of Thomas and William to take as
classes respectively at their deaths.    A sufficient answer to
that would be that in our opinion there is nothing in the will
other than what has been referred to to indicate such an
intention.    But the inquiry in such a case is never, whether
the testator intended the first taker to have a life estate or
a fee, but always whether the phrase used to effect the devo-
lution of the estate after the termination of the particular
estate, in fact referred to the general heirs of the ancestor,
or designated particular persons.    *Tiffany on Real Property,*
par. 151; 2 *Washburn on Real Property,* p. 655, *et seq.*   And
in such an inquiry the fact that the donor or testator used
the words "heirs" and "children" in different parts of the
same instrument is without significance, because it is pre-
sumed that he knew the difference in their legal meaning.
*Devlin on Deeds,* p. 1549.    Nor are the cases cited by the
appellants in any sense in conflict with these principles.
*Tongue v. Nutwell,* 13 Md. 415, turned largely upon the
interpretation of the word "issue," as indicated by the context
in which it was found in the will in that case, just as it did in
*Chelton v. Henderson,* 9 Gill, 432.    In *Fulton v. Harmon,*
44 Md. 251, the will provided for the distribution of the
"proceeds" of the real estate devised, which was held to be
"incompatible with the rule of descent," and in *Simpers v.*

*Simpers,* 15 Md. 160, it was held that the word "issue" was a "term of equivocal import," being a word of limitation or purchase according to the intention of the testator as deduced from the expressions contained in his will. *Shreve v. Shreve,* 43 Md. 382, also turned on the construction of the word "issue" as used in the will which the court construed in that case.

It would be idle to further prolong any discussion of the authorities, for in this case it may be said, as in *Warner v. Sprigg,* 62 Md. 14, "it would be difficult to find a clearer case for the application of the statute than the present one." The devise is to the "heirs at law" of William L. Rhodes, and that phrase is not qualified by any other expression found in the will, and we must hold, therefore, that, under the rule in Shelley's case, William Rhodes took a fee simple estate in an undivided one-half of the property devised by and under the fourth item of the will of Richard Rhodes, and that the demurrer to the plaintiff's declaration was properly sustained.

In view of this conclusion, it becomes unnecessary to discuss the question of *res adjudicata,* and the judgment appealed from will be affirmed.

*Judgment affirmed, with costs to the appellee.*